**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID OSIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT W. DEMANE,<br><br>Defendant. | Civil Action No.: 05-2283 (JLL)<br><br><br>**OPINION & ORDER** |
| CELESTINO DIAZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT W. DEMANE, *et al.*,<br><br>Defendants. | Civil Action No.: 05-2280 (JLL)<br><br><br>**OPINION & ORDER** |

**APPEARANCES:**

Philip B. Seaton, Esq.
Joseph Click, Esq.
BLANK ROME LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

Arthur Ballen, Esq.
ARTHUR E. BALLEN, P.C.
1103 Laurel Oak Road, Suite 160
Voorhees, NJ 08043

Melvin Greenberg, Esq.
Sumeeta Gawande, Esq.
GREENBERG DAUBER EPSTEIN & TUCKER
One Gateway Center - Suite 600
Newark, NJ 07102

**LINARES**, District Judge:

This matter comes before the Court on the motion of Defendant Robert W. DeMane (hereinafter "Defendant" or "DeMane") for an Order (1) dismissing the Verified Complaint in *Diaz, et al. v. DeMane, et al.,* Civil Action No. 05-CV-2280 and the Amended Complaint in *Osio, et al. v. DeMane,* Civil Action No. 05-CV-2283 (hereinafter collectively "the Complaint"[1]) pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 *et seq.,* and pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with the particularity required under the foregoing Act and the foregoing Rule; (2) dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted; and (3) dismissing the Complaint as barred by the statute of limitations set forth in 15 U.S.C. §78j(e), as amended by 28 U.S.C. §1658. The Court has considered the papers submitted by the parties, as well as the oral arguments of the parties held on July 18, 2005. For the reasons that follow, DeMane's motion to dismiss is DENIED in part and GRANTED in part.

## BACKGROUND

### I.    Factual Background

This case stems from a series of business transactions between Defendant and Plaintiffs

---

[1]The two Complaints are very similar except for paragraph numbering and that the *Osio* plaintiffs added an additional cause of action under Count III. For purposes of this Opinion and Order, the Court will refer only to the *Osio* Amended Complaint and will utilize its paragraph numbering unless otherwise stated.

David J. Osio and Vaduz Financial Corporation (hereinafter "*Osio* Plaintiffs"), and Plaintiffs

Celestino Diaz, Filippo Sindoni, Carlos Alfredo Garcia, the Randall Investment Group, Nelly

Susana Alvarez, Armando De Armas, Oscar Perez Croes, Rodeo Overseas, Inc., Juan Simon

Mendoza, Augusto Perez-Rendiles, Castany Investment, Ltd., Oliver Dow, Carlos Vera, Jenner

Finance Corp., Edgar Bossio, AME Holdings, Inc., Ilio Ulivi, Durban Associated, S.A., Christian

Rodriguez, Maria De Lourdes De Icaza, Ardino International, Inc., Datapro and Ricardo Montero

(hereinafter "*Diaz* Plaintiffs") relative to the Dollar Savings Bank (hereinafter "the Bank"), a

federally chartered savings bank with its headquarters in Newark, New Jersey.  In a series of

purchase and sale transactions between March and October of 2003, Plaintiffs acquired 98

percent of the stock of Dollar Bancorp, Inc. (hereinafter "Bancorp"), the holding company for the

Bank.  Plaintiffs ostensibly purchased this stock from eleven Bancorp shareholders.  As was later

revealed, these Bancorp shareholders were straws and not real owners.  It is undisputed that

Defendant DeMane was president, chief executive officer and a member of the board of directors

of the Bank and Bancorp, both before and after Plaintiffs purchased a controlling interest in the

Bank.  It also appears undisputed that these purchase and sale transactions were coordinated by

Plaintiff Osio, on behalf of the other Plaintiffs, and by Defendant DeMane.

Plaintiffs allege fraud surrounding five different instances of misrepresentations: (1) the

alleged obligation of Defendant to file notice of change of control over the bank, (2) Defendant's

alleged misrepresentation or omission regarding the large percentage of the bank's deposits

belonging to Defendant, (3) that in 2004 Defendant planned to abscond with money from the

bank, (4) Defendant's alleged non-compliance with federal banking laws, and (5) the existence of

claims by IndyMac against the bank for loans that were part of a fraudulent property-flipping

scheme.

On February 3, 2004, examiners from the Office of Thrift Supervision (hereinafter "OTS") arrived at the Bank's offices to investigate irregularities in the origination or brokering of mortgage loans that involved the Bank. (Compl. ¶ 55). The next day, Defendant began to withdraw funds from accounts at the Bank over which he had signature authority. (Compl. ¶ 56). "By February 11, DeMane had caused the Bank to issue 41 official checks totaling over $4 million payable to himself or his designees." (Id.).

On February 13, 2004, OTS placed Dollar Savings Bank in receivership, and appointed the FDIC as receiver. (Compl. ¶ 57). The OTS's receivership order, dated February 13, contained findings and determinations by the Director of OTS. (Compl. Ex. E). The Director found that the Bank was in an unsafe and unsound condition to transact business due to:

- its failure to properly supervise its mortgage origination business,
- lack of adequate books and records,
- lack of senior management,
- deposit withdrawals by its former President that had a negative effect on the Bank's liquidity,
- improper and unauthorized change of control, and
- improper solicitation of funds by its holding company.

(Id. at 2). A determination was also made that the Bank attempted to conceal the scope of its mortgage origination business and that a change in control occurred without first filing an application with or obtaining approval for a change of control from OTS, in violation of OTS regulation. (Id.). On that same date, OTS issued a Notice of Charges against DeMane, based on the OTS's investigation. (Compl. Ex. F). Also on February 13, OTS issued a Temporary Order to Cease and Desist to Robert DeMane. (Compl. Ex. G).

On February 17, 2004, IndyMac Bank FSB filed a lawsuit against the Bank in Los

Angeles County Superior Court seeking damages in excess of $900,000 based on defaults by

borrowers on 16 real property loans. (Compl. ¶ 62; Compl. Ex. H). It is alleged that all but one

of these loans had been sold to IndyMac in 2000 and 2001 by the Bank pursuant to a Loan Sale

Agreement. (Id.).

## II.       Procedural Background

The *Diaz* Plaintiffs commenced the instant action on April 27, 2005 and the *Osio*

Plaintiffs commenced same on April 28, 2005. On May 24, 2005, the *Osio* Plaintiffs filed an

Amended Complaint that eliminated the Federal Deposit Insurance Corporation (hereinafter "the

FDIC") as a Defendant. By Order dated May 24, 2005, the Court ordered that DeMane, through

his attorney, shall show cause before this Court on June 30, 2005 why the preliminary injunction

sought in Plaintiffs' Complaint should not be granted. Subsequently, on June 3, 2005, DeMane

filed a motion to dismiss. At the parties' request, the Court rescheduled the show cause hearing

so that the motion to dismiss could be heard at the same time as the motion for a preliminary

injunction and/or writ of attachment. Oral argument was heard on both motions on July 18,

2005. Plaintiffs' motion for a preliminary injunction and/or writ of attachment was denied

without prejudice as premature, and the Court reserved decision on Defendant's motion to

dismiss.

## LEGAL STANDARDS

## I.       Standard For Dismissal Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule 12(b)(6), all allegations in the

complaint must be taken as true and viewed in the light most favorable to the plaintiff. Gomez v.

Toledo, 446 U.S. 635, 636 n.3 (1980); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).

Claims should be dismissed under Fed. R. Civ. P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Though a court must take as true all the facts alleged, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Further, on a 12(b)(6) motion, a court shall properly reject any "conclusory recitations of law" pled within the complaint. Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988). The documents to which the court can look are limited. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1424-26 (3d Cir. 1997). If a party puts forth a document that is not cited in or attached to the complaint, the Court may only consider that document if it is "'integral to or explicitly relied upon in the complaint.'" Id. at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).

## II.      Statute Of Limitations For § 10(b) And Rule 10b-5 Claims

Count I of Plaintiffs' Complaint alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (Plaintiffs' Complaint ¶ 89). On July 30, 2002, Congress amended 28 U.S.C. § 1658, as part of the Sarbanes-Oxley Act, stating that

> a private right of action that involves a claim of fraud, deceit, manipulation, or
> contrivance in contravention of a regulatory requirement concerning the securities
> laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15
> U.S.C. 78c(a)(47)), may be brought not later than the earlier of --
> (1) two years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. 1658(b). Thus the "violation" (i.e., the misrepresentation or omission) is the triggering

Page 6 of 17

event and Plaintiffs must have filed their action within two years of discovering sufficient facts regarding the alleged fraud.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991) (stating that litigation instituted pursuant to §10(b) and Rule 10b-5 must be commenced within the applicable time frame following the alleged misrepresentations).

In the District of New Jersey, "'plaintiffs bear the burden of pleading compliance with Lampf, because the statute of limitations it sets forth is a substantive requirement rather than a procedural one.'" California Pub. Employees' Ret. Sys. v. Chubb Corp., 2002 U.S. Dist. LEXIS 27189, at *73-74 (D.N.J. June 26, 2002), aff'd, 394 F.3d 126 (3d Cir. 2004), (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 598 (D.N.J. 1996) (citing Rolo v. City Investing Co. v. Liquidating Trust, 845 F. Supp. 182, 243 n.38 (D.N.J. 1994)); see also Kress v. Hall-Houston Oil Co., 1993 U.S. Dist. LEXIS 6350, at *5-6 (D.N.J. May 12, 1993). "In order to satisfy the discovery prong of the limitations period [in a § 10(b) action], a plaintiff must set forth the time and circumstances of discovery of the fraud, the reason why discovery was not made earlier, and the diligent efforts the plaintiff undertook in making such discovery." Rolo, 845 F. Supp. at 243.

## LEGAL DISCUSSION

Through his motion to dismiss, Defendant DeMane seeks to have (1) Plaintiffs' fraud claims dismissed for failure to plead with particularity, (2) the section 10(b) and Rule 10b-5 claims dismissed as untimely under the applicable statute of limitations, and/or (3) the Complaint dismissed for failure to state a claim upon which relief can be granted.  The Court will now review each of these requests.

## I.     Fraud Claims (Counts I, II, III, IV, and V)

Defendant argues that Plaintiffs' section 10(b) and Rule 10b-5 claims are untimely and

that they lack the particularity required for pleading a fraud claim.  Further, even if they did have

the required particularity, Defendant contends that the fraud claims still fail to state a claim.

Lastly, it is argued that if Plaintiffs' section 10(b) and Rule 10b-5 claims are dismissed, for

failure to plead with particularity, then the remaining fraud claims must also be dismissed.

### A.     Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5 (Count I)

Count I alleges a violation of section 10(b) of the Securities Exchange Act and Rule 10b-

5 promulgated thereunder.  As a threshold matter, the Court will first address Defendant's

argument that the § 10b-5 claims are barred by the statute of limitations. The parties do not

dispute the applicable statute of limitations, rather they dispute the date the statute commenced

and whether "inquiry notice" remains applicable in the Third Circuit in light of the more liberal

statute of limitations.

Defendant cites Ronson Corp. v. Steel Partners II, LP, 119 Fed. Appx. 392, 394 (3d Cir.

Jan. 6, 2005), for the proposition that the inquiry notice standard has not changed and is present

in both the Securities and Exchange Act's one-year limitations period, 15 U.S.C. § 78r(c), and the

Sarbanes-Oxley Act's two-year limitations period, 28 U.S.C. § 1658(b)(1).  The Ronson case

however does not specifically refer to any impact the law might have caused to inquiry notice.

There the court applies the inquiry notice standard and started the statute of limitations period

based on when "in the exercise of reasonable diligence," the plaintiff had sufficient information

to excite storm warnings.  Ronson, 119 Fed. Appx. at 342 (quoting Gruber v. Price Waterhouse,

697 F. Supp. 859, 863 (E.D. Pa. 1988).  In Ronson, the court found that storm warnings existed

Page 8 of 17

earlier and the claim was time barred.  Ronson, 119 Fed. Appx. at 342.

Plaintiffs argue that inquiry notice is no longer applicable and explaint that the Third

Circuit inquiry notice approach is hard to reconcile with the new legislation.  Plaintiffs state that

"Congress, of course, could have provided for inquiry notice by including language requiring that

an action be brought within two years after the facts constituting the violation should have been

discovered." (Pl. Opp. Br. at 35).

Although the Third Circuit has not specifically ruled on whether the inquiry notice

standard still applies under Sarbanes-Oxley, other courts have continued to apply it.  See Tello v.

Dean Witter Reynolds, Inc., 410 F.3d 1275, 2005 U.S. App. LEXIS 9977, at *8 (11th Cir. June

1, 2005); Quaak v. Dexia S.A., 357 F. Supp. 2d 330, 339 (D. Mass. 2005); In re DVI, Ins.

Securities Litig., 2005 WL 1307959, at *11-12 (E.D. Pa. May 31, 2005); Joffee v. Lehman Bros.,

Inc., 2005 WL 1492101, at *6-7 (S.D.N.Y. June 23, 2005); Zurich Capital Markets Inc. v.

Coglianese, 332 F. Supp. 2d 1087, 1101 (N.D. Ill. 2004); In re Merrill Lynch & Co., Inc.

Research Reports Securities Litigation, 272 F. Supp. 2d 243, 265 (S.D.N.Y. 2003); In re

Enterprise Mortgage Acceptance Co., L.L.C. Securities Litigation, 295 F. Supp. 2d 307, 311

(S.D.N.Y. 2003); In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 289 F.

Supp. 2d 416, 423 (S.D.N.Y. 2003); In re Enterprise Mortgage Acceptance Co., L.L.C. Sec.

Litig., 295 F. Supp. 2d 307, 311 (S.D.N.Y. Nov.14, 2003); Taylor v. Prudential Ins. Co. of

America, 2003 WL 21314254, at *4-6 (S.D. Ind. May 7, 2003).  For example, in James v. AT &

T Corp., 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004), the Southern District of New York stated

that "The Sarbanes-Oxley Act of 2002 (Pub. L. No. 107-204) extended the one-year period to

two years for proceedings commenced on or after July 30, 2002--so thereafter plaintiffs on

inquiry notice of a wrong had two years within which to bring suit." In re Enron Corp.

Securities, Derivative & ERISA Litigation, 2004 WL 405886, at *11 (S.D. Tex. Feb. 25, 2004)

Moreover, as Defendant asserts, the language of the statute of limitations under the

Securities Exchange Act, 15 U.S.C. § 78i(e), to which courts applied inquiry notice, provided

that actions must be "brought within one year after the discovery of the facts constituting the

violation and within three years after such violation." See, e.g., Menowitz v. Brown, 991 F.2d 36

(2d Cir. 1993) (holding that "discovery" under statute of limitations provision (15 U.S.C. §

78i(e)) includes constructive or inquiry notice, as well as actual notice). Similarly, under the

Sarbanes-Oxley Act, 28 U.S.C. § 1658, actions must be commenced no later than "two years

after the discovery of the facts constituting the violation" or within five years of such a violation.

The Court thus concludes that given the similarity in the language, the fact that courts

continue to utilize inquiry notice in cases using the new statute of limitations under the Sarbanes-

Oxley Act, and no direction to the contrary from the Third Circuit, inquiry notice is still

applicable in § 10(b) and Rule 10b-5 cases.

The Third Circuit has held that inquiry notice should be analyzed in two steps. "First, the

burden is on the defendant to show the existence of 'storm warnings.'" Mathews v. Kidder,

Peabody & Co., 260 F.3d 239, 252 (3d Cir. 2001). "Second, if the defendants establish the

existence of storm warnings, the burden shifts to the plaintiffs to show that they exercised

reasonable due diligence and yet were unable to discover their injuries." Id. The test for "storm

warnings" hinges on whether a "reasonable investor of ordinary intelligence would have

discovered the information and recognized it as a storm warning." In re NAHC, Inc. Sec. Litig.,

306 F.3d 1314, 1325 (3d Cir. 2002). Once placed on inquiry notice, Plaintiff has a "duty to

exercise reasonable diligence to uncover the basis for [its] claims, and [is] held to have constructive notice of all facts that could have been learned through diligent investigation during the limitations period." Id. Thus, the inquiry by this Court is to determine the point at which Plaintiffs should have realized that the statements and alleged omissions made by Defendant with respect to the sale of Bancorp's stock were in fact fraudulent in nature.

Here, Defendant has argued that the change of control form on the computer disk they received around February 4, 2003 and the financial statements obtained prior to the sale were "storm warnings." Further, Defendant suggests that if there were misrepresentations or omissions, Plaintiffs could have learned of them from their due diligence process which Plaintiffs fail to describe. Plaintiffs contend that this is insufficient to establish a storm warning that DeMane was lying and committing fraud when he himself was not filing any notice with OTS and the sale was being structured as a series of transactions between multiple sellers and purchasers. Even assuming that Plaintiffs are deemed sophisticated investors, "a sophisticated investor is not barred by reliance upon the honesty of those with whom he deals in the absence of knowledge that the trust is misplaced. Integrity is still the mainstay of commerce." Straub v. Vaisman & Co, Inc., 540 F.2d 591, 598 (3d Cir. 1976). The Court concludes that the mere inclusion of a document on a computer disk, or some financial statements that may or may not be the ones relied on by Plaintiffs, are insufficient to constitute storm warnings.

Although Defendant does not meet his burden of showing the existence of "storm warnings," Plaintiffs still fail in their initial burden of pleading compliance with the statute of limitations. This is fatal to Plaintiffs' federal securities fraud claims. Rolo, 845 F. Supp. at 243 (dismissing the securities fraud claim as untimely where the plaintiffs' allegation fails to plead

compliance with the statute of limitations).  The Court has thoroughly read Plaintiffs' Complaints and cannot find any assertion of exactly when Plaintiffs first learned of the misrepresentations, why discovery was not made sooner, nor an explanation of the due diligence that was performed. See id.

It is clear when the OTS concluded there were regulatory violations, February 13, 2004, but that does not mean that is the first time Plaintiffs became aware of these violations.  The Complaint states that "Osio retained an attorney to conduct legal due diligence and an accountant to perform financial due diligence on behalf of plaintiffs and the Defrauded Investors" prior to the commencement of the stock transactions, (Compl. ¶ 18), which began on or about March 10, 2003, (Compl. ¶ 26).  By March 10, 2003, Plaintiffs owned about 55% of Bancorp's stock.  (Diaz Compl. ¶¶ 5-9; Osio Compl. ¶ 6).  Nowhere does the Complaint assert that Plaintiffs did not learn of facts that would make them aware of these violations, or put them on notice, as a result of this due diligence.  These events may have given Plaintiffs access to information that they would not already have had.  Compliance with the statute of limitations must be apparent from the face of the Complaint.  See, e.g., In re Chaus Sec. Litig., 801 F. Supp. 1257, 1270 (S.D.N.Y. 1992) ("Once the defendant has raised the statute of limitations defense to a securities fraud claim, it is the plaintiff's burden to demonstrate they have filed their complaint within the limitations period. Such compliance must be apparent from the complaint.").  Furthermore, although it would not meet their burden, Plaintiffs' opposition brief does not even state when they first learned of the misrepresentations.  Since Plaintiffs have failed to plead compliance with the statute of limitations, their § 10(b) and Rule 10b-5 claims must be dismissed.

Plaintiffs requested that if the Court dismissed any such claims, that they be permitted

leave to amend the Complaint. (Def. Opp. Br. at 40). Accordingly, the Court will permit

Plaintiffs to move for leave to file a Second Amended Complaint which, in compliance with

Rule 11(b), corrects the Amended Complaint's pleading deficiencies.

**B.       The Remaining Fraud Claims (Counts II, III, IV and V)**

Defendant argues in his reply brief that it is well established law that "when a § 10(b)

claim is dismissed for failure to plead fraud with particularity, the underlying state law claims

also fail, including those asserting common law fraud, N.J. Securities law violations and other

fraud-based claims." (Def. Reply Br. at 2). Although Defendant fails to cite any of the clear case

law supporting this proposition, he goes on to elaborate by stating that "Non-fraud claims

imbedded in a § 10(b) complaint fail, too." For this latter proposition, Defendant cites California

Pub. Employees' Retirement Sys. v. Chubb Corp., 394 F.3d 126, 160 (3d Cir. 2004). These

arguments are wrong and this recent Third Circuit case does nothing to support Defendant's

patently incorrect propositions. Chubb dealt with "[t]he question of whether the heightened

pleading standard articulated in Rule 9(b) applies to claims brought under section 11 of the 1933

Act that sound in fraud. . . ." Id. (emphasis added). In affirming the District Court's dismissal of

the plaintiffs' section 11 claims from the 1933 Act because they were permeated with fraud, the

court noted that while section 11 claims may include strict liability claims that do not sound in

fraud, those claims that are grounded in fraud are nevertheless subject to Rule 9(b). Id. at 160-

63. Nowhere does the court state that other state law fraud claims are subject to the heightened

level of pleading particularity under the Private Securities Litigation Reform Act of 1995

("PSLRA"),[2] 15 U.S.C. § 78u-4 et seq., nor does it state that non-fraud claims fail along with the federal securities claim. Furthermore, as the Third Circuit aptly stated, Defendant's "argument disregards the fact that Rule 9(b) and the PSLRA impose distinct and independent pleading standards." Id. at 161.

Because Defendant takes the incorrect position that all the remaining fraud claims fail because the § 10(b) claims purportedly fail, and thus does not analyze each in turn, the Court will not consider the remaining claims sua sponte under the appropriate Rule 9(b) standard.

Lastly, only one week before oral argument was scheduled, Defendant takes a different stance and, for the first time, argues in his reply brief that none of the *Diaz* Plaintiffs plead fraud with particularity. (Def. Reply Br. at 2-3). Since this basis for dismissal was not properly briefed, the Court strikes that portion of the reply brief. See Bayer AG v. Schein Pharmaceutical, 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (striking portion of reply brief that raised new issue for the first time because the opposing party did not have an opportunity to respond).

Therefore, Defendant's motion to dismiss Plaintiffs' fraud claims, set forth in Counts II, III, IV, or V, for failure to state a claim or for failure to plead fraud with particularity is denied.

## II.    Claim for Indemnification (Count VI)

Defendant contends that Count VI of the Complaint seeking indemnification should be

---

[2]"[A] party asserting a claim under the federal securities laws must meet the heightened pleading standard set forth under the PSLRA, enacted in 1997 to restrict abuses in securities class-action litigation." In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1328 (3d Cir. 2002). In order to survive a motions to dismiss under the PSLRA, the plaintiff's Complaint must identify: (1) each specific statement containing a misrepresentation or omission of material fact, (2) the reason or reasons why the statements are misleading, and (3) specific facts that demonstrate who made them, when they were made, what was said, and that they were made knowingly or recklessly, or that Defendant had both opportunity and motive to commit fraud. 15 U.S.C. § 78u-4(b).

dismissed for failure to state a claim on which relief can be granted. Count VI contains a claim for indemnity, under Paragraph 5.2 of the Purchase and Sale Agreement, for any loss resulting from a breach of any representation or warranty made by the sellers. (Compl. ¶ 118). The Complaint asserts that Defendant breached representations and warranties made to the Plaintiffs, through the Purchase and Sale Agreements, by stating: "that the shares sold to the plaintiffs were not encumbered, that the sale of the shares was not in violation of any applicable law or regulation, and that the seller named in the Purchase and Sale Agreements owned and intended to sell the shares of Bancorp to the plaintiffs." (Compl. ¶¶ 117, 119).

Defendant's contend that nowhere in the Complaint do Plaintiffs explain how the shares were encumbered. In response, Plaintiffs solely rely on arguing notice pleading and continue to fail to support this allegation. While Rule 8(a) permits notice pleading, it at least requires "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a). Merely stating, in a thirty-seven page complaint, that the stock was encumbered is insufficient to put Defendant on notice of the claim against him. Further, courts routinely reject "conclusory recitations of law" pled within the complaint. Pennsylvania v. PepsiCo, Inc., 836 F.2d at 179. Plaintiffs' Complaint, thus, fail to state a claim for indemnification as a result of any unspecified encumberment.

As for the two remaining grounds for indemnification there is sufficient facts plead in the Complaint that support these claims. In addition, the response by the OTS may demonstrate that there were violations of the law in the manner of the sale, and since Defendant does not deny the use of fictitious names in the sale of the shares, Plaintiffs do state a claim that, if proven, they are entitled to indemnification from Defendant for their damages.

In sum, the Court will only dismiss the claim for indemnification arising from any allegations that the shares were encumbered at the time of sale.

## CONCLUSION

For the foregoing reasons, it is on this 26th day of July 2005, hereby **ORDERED**

**THAT**:

1. Defendant's motion to dismiss the Verified Complaint in *Diaz, et al. v. DeMane, et al.*, Civil Action No. 05-CV-2280, for failure to plead fraud with the particularity required under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 *et seq.*, and pursuant to Fed. R. Civ. P. 9(b), is DENIED; and

2. Defendant's motion to dismiss the Amended Complaint in *Osio, et al. v. DeMane*, Civil Action No. 05-CV-2283, for failure to plead fraud with the particularity required under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 *et seq.*, and pursuant to Fed. R. Civ. P. 9(b), is DENIED; and

3. Defendant's motion to dismiss the Verified Complaint in *Diaz, et al. v. DeMane, et al.*, Civil Action No. 05-CV-2280, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted, is DENIED in part and GRANTED only as to the dismissal of the claim for indemnification arising from allegations that the shares were encumbered at the time of sale; and

4. Defendant's motion to dismiss the Amended Complaint in *Osio, et al. v. DeMane*, Civil Action No. 05-CV-2283, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted, is DENIED in part and GRANTED only as to the dismissal of the claim for indemnification arising from allegations that the shares were encumbered at the time of

sale; and

5. Defendant's motion to dismiss Count I of the Verified Complaint in *Diaz, et al. v. DeMane, et al.,* Civil Action No. 05-CV-2280, for failure to meet their burden in pleading the statute of limitations set forth in 15 U.S.C. §78j(e), as amended by 28 U.S.C. §1658, is GRANTED, and permits Plaintiffs to move for leave to file a Second Amended Complaint within thirty (30) days of the date of this Opinion and Order; and

6. Defendant's motion to dismiss Count I of the Amended Complaint in *Osio, et al. v. DeMane,* Civil Action No. 05-CV-2283, for failure to meet their burden in pleading the statute of limitations set forth in 15 U.S.C. §78j(e), as amended by 28 U.S.C. §1658, is GRANTED, and permits Plaintiffs to move for leave to file a Second Amended Complaint within thirty (30) days of the date of this Opinion and Order.

DATED: July 26, 2005

JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE