**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID OSIO, *et al.*, | Civil Action No.: 05-2283 (JLL) |
| Plaintiffs, | |
| v. | **OPINION & ORDER** |
| ROBERT W. DEMANE, | |
| Defendant. | |

| | |
|---|---|
| CELESTINO DIAZ, *et al.*, | Civil Action No.: 05-2280 (JLL) |
| Plaintiffs, | |
| v. | **OPINION & ORDER** |
| ROBERT W. DEMANE, | |
| Defendant. | |

**APPEARANCES:**

Philip B. Seaton, Esq.
Joseph Click, Esq.
BLANK ROME LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
      (Counsel for the *Osio* Plaintiffs)

Arthur Ballen, Esq.
ARTHUR E. BALLEN, P.C.
1103 Laurel Oak Road, Suite 160
Voorhees, NJ 08043
     (Counsel for the *Diaz* Plaintiffs)

Melvin Greenberg, Esq.
Sumeeta Gawande, Esq.
GREENBERG DAUBER EPSTEIN & TUCKER
One Gateway Center - Suite 600
Newark, NJ 07102
     (Counsel for Defendant)


**LINARES**, District Judge:

     This matter comes before the Court on the motion of Defendant Robert W. DeMane

(hereinafter "Defendant" or "DeMane") for an Order (1) dismissing the First Amended

Complaint in *Diaz, et al. v. DeMane,*[1] Civil Action No. 05-CV-2280 and the Second Amended

Complaint in *Osio, et al. v. DeMane*, Civil Action No. 05-CV-2283 (hereinafter collectively "the

Complaint")[2] pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 <u>et</u>

<u>seq.</u>, and pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with the particularity required

under the foregoing Act and the foregoing Rule; (2) dismissing the Complaint pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted; and (3) dismissing the

Complaint as barred by the statute of limitations set forth in 15 U.S.C. §78j(e), as amended by 28

---

     [1]By way of stipulation and dismissal, dated January 20, 2006, and So Ordered by this
Court on May 9, 2006, Defendant FDIC was dismissed with prejudice.

     [2]The two Complaints are very similar except for paragraph numbering and that the *Osio*
Plaintiffs added an additional five paragraphs pleading compliance with 28 U.S.C. § 1658. For
purposes of this Opinion and Order, the Court will refer only to the *Osio* Second Amended
Complaint (hereinafter "Compl.") and will utilize its paragraph numbering unless otherwise
stated.

U.S.C. §1658.  This Court has jurisdiction pursuant to 15 U.S.C. § 78aa (the Securities and

Exchange Act of 1934), 28 U.S.C. § 1331, and 28 U.S.C. § 1332(a).  The Court decides this

matter without oral argument.  Fed. R. Civ. P. 78.  For the reasons that follow, Defendant

DeMane's motions to dismiss are granted in part and denied in part.

<u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

The facts of this case have already been set out extensively by the Court in its prior

Opinions, and as such need not be reiterated in full for purposes of the present motion.  The facts

relevant to the present motions, however, are set forth below and will be discussed in more detail

in the pertinent legal discussion.

This is a securities fraud case arising from a series of business transactions between

Defendant and Plaintiffs David J. Osio and Vaduz Financial Corporation (hereinafter "*Osio*

Plaintiffs"), and Plaintiffs Celestino Diaz, Filippo Sindoni, Carlos Alfredo Garcia, the Randall

Investment Group, Nelly Susana Alvarez, Armando De Armas, Oscar Perez Croes, Rodeo

Overseas, Inc., Juan Simon Mendoza, Augusto Perez-Rendiles, Castany Investment, Ltd., Oliver

Dow, Carlos Vera, Jenner Finance Corp., Edgar Bossio, AME Holdings, Inc., Ilio Ulivi, Durban

Associated, S.A., Christian Rodriguez, Maria De Lourdes De Icaza, Ardino International, Inc.,

Datapro and Ricardo Montero (hereinafter "*Diaz* Plaintiffs") relative to the Dollar Savings Bank

(hereinafter "the Bank"), a federally chartered savings bank with its headquarters in Newark,

New Jersey.  In a series of purchase and sale transactions between March and October of 2003,

Plaintiffs acquired 98 percent of the stock of Dollar Bancorp, Inc. ("Bancorp" or "DBI"), the

holding company for the Bank, and Defendant retained a 2 percent interest.  Plaintiffs ostensibly

purchased this stock from 11 Bancorp shareholders.  It is undisputed that Defendant DeMane was

president, chief executive officer and a director of the Bank and Bancorp both before and after

Plaintiffs purchased a controlling interest in the Bank.  These purchase and sale transactions were

coordinated by Plaintiff Osio, on behalf of the other Plaintiffs as their agent, and by Defendant

DeMane.

On February 3, 2004, examiners from the Office of Thrift Supervision (hereinafter

"OTS") arrived at the Bank's offices to investigate irregularities in the origination or brokering of

mortgage loans that involved the Bank.  The next day, Defendant began to withdraw funds from

accounts at the Bank over which he had signature authority.  On February 13, 2004, OTS placed

Dollar Savings Bank in receivership, and appointed the FDIC as receiver.

In lieu of filing an Answer, Defendant filed a motion to dismiss both Complaints.  An

Opinion and Order was entered on July 26, 2006 ("July 26 Opinion and Order") in which the

Court dismissed Plaintiffs' claims of violations of § 10(b) of the Securities Exchange Act of

1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, without prejudice, for failure

to adequately plead compliance with the applicable statute of limitations.  The Court granted

Plaintiffs leave to amend.  The Court denied Defendant's motion to dismiss the remaining claims

because Defendant did not separately analyze how the remaining claims failed to meet the

applicable legal standards.  Defendant's motion for reconsideration was denied on March 29,

2006 ("March 29 Opinion and Order").

It appears from the record that the *Osio* Plaintiffs filed a Second Amended Complaint,

and the *Diaz* Plaintiffs elected not to amend their First Amended Complaint.  According to the

*Osio* Plaintiffs, the only new paragraphs in the Second Amended Complaint are paragraphs 88

through 92, which were added to comply with pleading compliance with the statute of

limitations, 28 U.S.C. § 1658.  Also, some internal cross-references to paragraph numbers were changed to reflect the addition of these paragraphs, and the new filing is unverified.  Otherwise, the Second Amended Complaint is unchanged.  Accordingly, as Plaintiffs point out, since they did not amend the indemnification claim, they have essentially dropped the claim to the extent it is based on an encumbrance of the stock sold by Defendant, though they proceed with the claim as set forth in the Court's July 26 Opinion and Order.  (Pl. Opp. Br. at 14 n.3).  Again, in lieu of filing an Answer, Defendant filed a motion to dismiss both Complaints.[3]

Plaintiffs' Complaints set forth the following six counts: (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder; (2) common law fraud; (3) violation of New Jersey Uniform Securities Law; (4) unjust enrichment; (5) rescission of the Purchase and Sale Agreements based on equitable fraud; and (6) indemnification under the Purchase and Sale Agreements.

---

[3]At Plaintiffs' request, the Court takes judicial notice that on July 6, 2005 DeMane pleaded guilty to a one-count information charging him with making a materially false statement to the Office of Thrift Supervision, namely a falsified annual report, in violation of 18 U.S.C. §§ 1001-1002.  The basis for the charge was DeMane's representation to the OTS that the shares of Bancorp were owned by various individuals when he was the sole owner of the stock.  His Sentence and Judgment were entered on February 6, 2006.

## LEGAL STANDARDS

**A.      Fed. R. Civ. P. 12(b)(6)[4]**

The applicable inquiry under Federal Rule 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). The question is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

---

[4]Defendant incorrectly contends that this Court may, on a motion to dismiss, consider the OTS charges that were brought against Plaintiffs Osio, Vaduz Financial Corp., Montero, DataPro, Inc. and Diaz, which they failed to mention to the Court. (Gawande Decl., Ex. 7). The referenced document is a Stipulation and Consent to Issuance of an Order to Cease and Desist and an Order of Assessment of a Civil Money Penalty that is signed by these Plaintiffs. According to the Stipulation, the OTS made the following findings of fact: from January 8, 2003 through February 13, 2004, the aforementioned parties entered into a series of transactions by which they acquired a substantial portion of the shares of Bancorp; by reason of pre-existing business and personal relationships among these parties they were deemed to be "acting in concert" in the acquisition; they unlawfully acquired rebuttable control; they unlawfully acquired "control"; they failed to file a rebuttal of control, a change-of-control notice, a holding company application, and a certification of ownership; and the entities failed to register as savings and loan companies. (Id.). The Court finds it curious that Plaintiffs repeatedly point out Defendant's charges by the OTS and fail to mention their own. Nevertheless, although the matter is of public record, the claims of the Plaintiffs are not based on that document. In re Party City Secs. Litig., 147 F. Supp. 2d 282, 297-98 (D.N.J. 2001). In fact they have obviously avoided the subject of that document. Under these circumstances, the Court does not rely on the OTS charges against Plaintiffs in determining the present motion to dismiss. The use of those charges would only be appropriate in the summary judgment context.

The Third Circuit has further noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

**B.    Heightened Pleading Requirements**

Fed. R. Civ. P. 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud, independent of the standard applicable to a Rule 12(b)(6) motion. Rule 9(b) states:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "This particularity requirement has been rigorously applied in securities fraud cases."  In re Burlington, 114 F.3d at 1417 (citations omitted). As such, plaintiffs averring securities fraud claims must specify "'the who, what, when, where, and how: the first paragraph of any newspaper story.'"  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).  The Third Circuit has further noted that "[a]lthough Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Nice Sys., 135 F. Supp. 2d at 577).

In addition to the Rule 9(b) requirements, plaintiffs alleging securities fraud must also comply with the heightened pleading requirements of the Reform Act, 15 U.S.C. § 78u-4(b)(1) and (b)(2).  Specifically, § 78u-4(b)(1) of the Act requires plaintiffs to "specify each statement

alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1). Further, with respect to securities fraud claims, such as Rule 10b-5 claims, the Reform Act requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Reform Act modified the traditional Rule 12(b)(6) analysis.  "'[W]hereas under Rule 12(b)(6), we must assume all factual allegations in the complaint are true ... under the Reform Act, we disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute.'"  In re Rockefeller Center, 311 F.3d at 224 (quoting Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 660 (8th Cir. 2001)).  The Reform Act requires a 'strong inference' of scienter, and accordingly, alters the normal operation of inferences under Rule 12(b)(6).  In re Digital Island Sec. Litig., 357 F.3d 322, 328 (3d Cir. 2004) (citing In re Rockefeller Ctr., 311 F.3d at 224 ) ("[U]nless plaintiffs in securities fraud actions allege facts ... with the requisite particularity ... they may not benefit from inferences flowing from vague or unspecific allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.")); see also Greebel v. FTP Software, Inc., 194 F.3d 185, 196 (1st Cir. 1999) ("A mere reasonable inference is insufficient to survive a motion to dismiss."). The failure to meet the Reform Act's pleading requirements will result in dismissal of the complaint.  In re Advanta, 180 F.3d at 531.

## DISCUSSION

**I.** **Motion to Dismiss the § 10(b) and Rule 10b-5 Claims**

Plaintiffs bring their claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15

U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

Section 10(b) proscribes the "use or employ[ment], in connection with the purchase or sale of

any security, ... [of] any manipulative or deceptive device or contrivance in contravention of such

rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j(b).  Rule 10b-5, in

turn, makes it illegal "[t]o make any untrue statement of a material fact or to omit to state a

material fact necessary in order to make the statements made in the light of the circumstances

under which they were made, not misleading ... in connection with the purchase or sale of any

security."  17 C.F.R. § 240.10b-5(b).  As the Third Circuit has observed, "[t]he private right of

action under Section 10(b) and Rule 10b-5 reaches beyond statements and omissions made in a

registration statement or prospectus or in connection with an initial distribution of securities and

creates liability for false or misleading statements or omissions of material fact that affect trading

on the secondary market."  In re Burlington Coat Factory,  114 F.3d at 1417 (citing Central Bank

of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)) (footnote

omitted); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216-17 (1st Cir. 1996); Eckstein v.

Balcor Film Investors, 8 F.3d 1121, 1123-24 (7th Cir. 1993), cert. denied, 510 U.S. 1073 (1994).

The following pleading requirements must be met to establish a valid claim under § 10(b)

of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. §

240.10b-5(b) (1998): defendant "(1) made a misstatement or an omission of a material fact (2)

with scienter (3) in connection with the purchase or the sale of a security (4) upon which the

plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." In re Ikon Office Solutions, Inc. Sec. Litig., 277 F.3d 658, 666 (3d Cir. 2002); see also Kline v. First Western Government Securities, Inc., 24 F.3d 480, 487 (3d Cir.), cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline, 513 U.S. 1032 (1994). In sum, "[t]he plaintiff must prove knowledge by the defendant, an intent to defraud, misrepresentation or failure to disclose, materiality of the information and, injurious reliance by the plaintiff." Silverman v. Ernst & Young, LLP, 1999 U.S. Dist. LEXIS 17703, at *19 (D.N.J. Aug. 3, 1999) (citing Thomas v. Duralite Co., 524 F.2d 577 (3d Cir. 1975); Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir.), cert. denied, 425 U.S. 993 (1976)). Since a securities fraud claim is being asserted, the plaintiff must satisfy the heightened pleading requirements of Federal Rule 9(b) and of the Reform Act, 15 U.S.C. § 78u-4(b)(1) and (b)(2).

In addition to the particularity requirement of 15 U.S.C. § 78u-4(b)(1), the Reform Act requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2). A plaintiff may establish the requisite strong inference of fraudulent intent in one of two ways: (1) by alleging facts "establishing a motive and an opportunity to commit fraud;" or (2) "by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." In re Advanta, 180 F.3d at 534-35; see also In re Burlington, 114 F.3d at 1418.

The "reasonable reliance" element of a Rule 10b-5 claim requires a showing that the plaintiff exercised that diligence that a reasonable person would have exercised to protect his interests. See AES Corp. v. Dow Chem. Co., 325 F.3d 174, 178 (3d Cir.), cert. denied, 540 U.S. 1068 (2003). In Straub v. Vaisman & Co., Inc., 540 F.2d 591, 598 (3d Cir. 1976), the Third

Circuit identified a variety of factors in determining whether plaintiff's reliance was reasonable, including the: (1) existence of a fiduciary relationship; (2) opportunity to detect the fraud; (3) sophistication of plaintiff; (4) existence of long standing business relationships or personal relationships; and (5) access to the relevant information.  Straub, 540 F.2d at 598; see also EP Medsystems, Inc., v. Echocath, Inc., 235 F.3d 865, 883 (3d Cir. 2000).

In addition, under the Sarbanes-Oxley Act, such a cause of action must be brought no later than the earlier of "(1) two years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. 1658(b).  Thus the "violation" (i.e., the misrepresentation or omission) is the triggering event and Plaintiffs must have filed their action within two years of discovering sufficient facts regarding the alleged fraud.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991) (stating that litigation instituted pursuant to §10(b) and Rule 10b-5 must be commenced within the applicable time frame following the alleged misrepresentations).  In this District, "'plaintiffs bear the burden of pleading compliance with Lampf, because the statute of limitations it sets forth is a substantive requirement rather than a procedural one.'"  Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 2002 U.S. Dist. LEXIS 27189, at *73 (D.N.J. June 25, 2002), aff'd, 394 F.3d 126 (3d Cir. 2004) (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 598 (D.N.J. 1996)).  "In order to satisfy the discovery prong of the limitations period [in a § 10(b) action], a plaintiff must set forth the time and circumstances of discovery of the fraud, the reason why discovery was not made earlier, and the diligent efforts the plaintiff undertook in making such discovery."  Rolo v. City Investing Co. v. Liquidating Trust, 845 F. Supp. 182, 243 n.38 (D.N.J.), aff'd, 43 F.3d 1462 (3d Cir. 1994).

-11-

Since there is still no guidance from the Third Circuit as to whether inquiry notice is applicable under the Sarbanes-Oxley Act, this Court stands by its analysis in the July 26 Opinion and Order holding that inquiry notice is still applicable in § 10(b) and Rule 10b-5 cases.  Under the "inquiry notice" standard, the two-year period begins to run when Plaintiff "discovered or in the exercise of reasonable diligence should have discovered the basis for their claim" against Defendants.  In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1325 (3d Cir. 2002).  Whether Plaintiff should have known of the basis of their claims depends on whether they had "sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity."  Id. (citation omitted).  The test for "storm warnings" hinges on whether a "reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning."  Id.  Once placed on inquiry notice, plaintiffs have a "duty to exercise reasonable diligence to uncover the basis for their claims, and are held to have constructive notice of all facts that could have been learned through diligent investigation during the limitations period."  Id. at 1326.  Thus, the inquiry by this Court is to determine the point at which Plaintiffs should have realized that the statements and alleged omissions made by Defendant were in fact fraudulent in nature.

This Court previously held that Plaintiffs failure to plead compliance with the statute of limitations was fatal to their federal securities fraud claims.  Rolo, 845 F. Supp. at 243 (dismissing the securities fraud claim as untimely where the plaintiffs' allegation failed to plead compliance with the statute of limitations); see also Benak v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006).  At that time, the Court was unable to determine when Plaintiffs alleged to have first learned of the misrepresentations, why discovery was not made

sooner, and what due diligence was conducted.  Since compliance with the statute of limitations

was not apparent from the face of the complaint, the Court dismissed the § 10(b) and Rule 10b-5

claims without prejudice and permitted Plaintiffs an opportunity to amend their Complaints.  As

the parties agree in the briefs, unlike the *Osio* Plaintiffs, the *Diaz* Plaintiffs did not amend Count

I of their Complaint to plead compliance with the statute of limitations as required by this

Court's July 26 Opinion and Order that dismissed Count I.  Therefore, Count I of the *Diaz*

Plaintiffs' Complaint remains dismissed and the Court will only address Count I of the *Osio*

Plaintiffs' Complaint, which was amended.

**A.     The Ownership and Change-in-Control Allegations**

Defendant argues that the Complaints fail to state a claim with respect to Defendant's

alleged misrepresentation of the ownership structure of the bank and the lack of necessity for

seeking OTS approval of the stock sales.

Plaintiffs contend that during a meeting between Plaintiff Osio and Defendant DeMane,

on February 11, 2003 concerning a Letter of Intent, that DeMane

> explained to Osio that he (Osio) must not have understood the nature of the
> transaction that the selling shareholders contemplated, and that the transaction as
> structured in the Letter of Intent would require regulatory approval. He further
> stated that it did not comport with the reality of the situation with regards to
> Bancorp share ownership. DeMane represented to Osio that, because the Bancorp
> shares were owned by several different shareholders, any purchase of the shares of
> Bancorp would have to occur as one-on-one purchases between individual clients
> of Davos and the current individual shareholders of Bancorp. He further
> represented that such transactions could be consummated without the need of
> prior regulatory approval.

(*Osio* Compl. ¶ 20).

In addition, the Purchase and Sale Agreements reflected the names of individuals, the

-13-

fictitious owners, that owned the shares of Bancorp stock.  (*Osio* Compl. ¶ 27).  The Agreements

stated that they intended to sell shares to the buyer and made the following representations:

> No representation or warranty of Seller in this Agreement omits to state a
> material fact necessary to make the statements herein or therein, in light of the
> circumstances in which they were made, not misleading.
> Seller hereby represents that its sale of Shares is being undertaken
> individually and further represents that the sale of the Shares is independent of
> any other sale or sales of the Shares.
> Seller further represents that it is not Acting in Concert with any other
> Person [defined to include other Sellers].
> Neither the execution nor delivery of this Agreement nor the
> consummation or performance of the sale of the Shares by Seller to Buyer will,
> directly or indirectly . . . (ii) contravene, conflict with, or result in a violation of
> any Legal Requirement or Order; (iii) contravene, conflict with, or result in a
> violation of any of the terms or requirements of, or give any Governmental Body
> the right to revoke, withdraw, suspend, cancel, terminate, or modify any
> Governmental Authorization to which the Seller is subject; (iv) result in the
> imposition or creation of any Encumbrance upon or with respect to the Shares.
> Seller is not required to give any notice to or obtain any Consent from any
> Person in connection with the execution and delivery of this Agreement or the
> consummation or performance of any of the Contemplated Transactions.

(*Osio* Compl. ¶ 29).

As it turned out, according to the Complaint, Defendant was the 100 percent shareholder

and he used fictitious names to structure the sales transactions so as to allegedly avoid regulatory

approval.  The parties were required to have filed for regulatory approval with the OTS, but did

not based on Defendant's representations.  The Court finds that these statements were material,

because a reasonable investor would have wanted to know the structure of the company and any

regulatory requirements.

Under the circumstances of this case, the Court also concludes that Plaintiffs have

adequately pled a strong inference of scienter.  It appears undisputed that Defendant knowingly

used fictitious names to sell his shares of stock.  It also appears to this Court that Plaintiffs have

pled facts to support a claim that Defendant was at least reckless in stating that regulatory approval was not required.  Plaintiffs allege that Defendant knew from prior attempts to sell stock that "he would need to notify and obtain the approval of the OTS."  (Compl. ¶ 80).

Turning to the element of reasonable reliance, as set forth above the Third Circuit has enunciated five factors to consider in determining whether the plaintiff's reliance is reasonable. Straub, 540 F.2d 598.  While "[i]ntegrity is still the mainstay of commerce," id., the facts as pled weigh against a finding that Plaintiffs' reliance was reasonable.  There was no fiduciary, long term, or personal relationship between Plaintiffs and Defendant.  Plaintiffs are sophisticated business people that had hired an attorney and an accountant to perform due diligence.  Plaintiffs presumably had access to the relevant information based on the confidentiality agreement that was signed for that purpose.  The only issue is whether Plaintiffs would have been able to detect the fraud regarding the ownership of the stock.  Given this significant issue of fact, the Court cannot say as a matter of law that Plaintiffs failed to adequately plead reliance as to the ownership misrepresentations.

Considering the same five factors with regard to the change of control misrepresentations, the Court concludes that Plaintiffs have failed to plead reasonable reliance.  As stated above, there was no fiduciary, long term, or personal relationship between Plaintiffs and Defendant, and Plaintiffs are sophisticated business people that had access to the relevant information.   Plaintiffs further had an opportunity to detect the fraud because they hired an attorney and accountant for the purpose of conducting due diligence.  Although they fail to identify what due diligence was done by the attorney and accountant they hired, Plaintiffs fail to explain why they did not determine on their own whether they need to file a notice with the OTS.  The Regulations are

relatively straightforward and a review of them would have revealed that filing was necessary.

See 12 C.F.R. § 574.3 (2003).[5]  These factors leave this Court convinced that Plaintiffs'

Complaint fails to plead reasonable reliance as to the change of control misrepresentations.

The question of whether the plaintiff has proven causation is usually reserved for the trier

of fact and is therefore inappropriate for resolution on a motion to dismiss.  See EP Medsystems,

235 F.3d at 884.  Since the issue before this Court is whether Plaintiffs adequately pled

causation, not whether they have proven it, this Court will proceed with its analysis.  It is

undisputed that the federal securities law requires Plaintiffs to plead both elements of causation:

transaction causation and loss causation.  See Newton v. Merrill Lynch, Pierce, Fenner & Smith,

Inc., 259 F.3d 154, 172 (3d Cir. 2001).  Transaction causation requires a showing of reliance on

the alleged misrepresentation or omission when the Plaintiffs purchased their securities.  Id. at

172.  In Semerenko v. Cendant Corp., the Third Circuit "equated loss causation with proximate

---

[5]The relevant portion of the regulation in effect in 2003 stated in relevant part:

Unless a transaction is exempt . . . no person . . . shall acquire control, as defined
in § 574.4 (a) and (b) of this part, of a savings association until written notice has
been provided to the Office and (1) the Office indicates in writing its intent not to
disapprove the proposed acquisition or (2) 60 days (or such period of time as the
Office may specify if the review period has been extended under § 574.6(c)(3) of
this part) have passed since receipt of a notice deemed sufficient under §
574.6(c)(2).

12 C.F.R. § 574.3(b) (2003).  The definition of an "acquiror" includes a person that has acquired
control over an institution in that they have more than 25 percent of any class of voting stock or
controls the election of a majority of the board of directors.  12 C.F.R. § 574.4(a) (2003).  A
reading of the Regulation makes clear that in this instance, Plaintiffs were the acquirors and had
the obligation to file notices.  12 C.F.R. §§ 574.4, 574.6 (2003).  The Regulation cited by
Plaintiffs merely discusses capital requirements and notice of divestiture, it is not relevant to an
obligation to provide notice of the acquisition to the OTS.  See 12 C.F.R. § 567.13(b) (2003)
(cited in Pl. Opp. Br. at 28).

-16-

cause, stating that there must be a 'sufficient causal nexus between the loss and the alleged

misrepresentation.'" EP Medsystems, 235 F.3d at 883 (quoting Semerenko v. Cendant Corp.,

223 F.3d 165, 184 (3d Cir. 2000)).  In addition, "an allegation that the misrepresentations

'directly or proximately caused, or were a substantial contributing cause of, the damages

sustained by plaintiff' adequately pled loss causation." Id.  Since the Court has held that

Plaintiffs pled reliance as to the ownership claims, they have likewise appropriately alleged

transaction causation.  However, for the same reason they did not plead reliance, Plaintiffs have

not adequately pled transaction causation for the change-of control misrepresentations.

     With respect to loss causation, the OTS indicated in its appointment of the Federal

Deposit Insurance Corporation ("FDIC") as receiver the following grounds on which it made its

decision:

> (a) The Institution is in an unsafe and unsound condition to transact business due
> to its failure to properly supervise its mortgage origination business, lack of
> adequate books and records, lack of senior management, deposit withdrawals by
> its former President, improper and unauthorized change of control, and improper
> solicitation of funds by its holding company; and
> (b) The Institution has attempted to conceal its mortgage origination business and
> the change in control.

(Osio Compl. Ex. E).  The Complaint alleges that as a result of Defendant's fraudulent activities,

the OTS placed the Bank in FDIC receivership for liquidation and their stock is now worthless.

(Osio Compl. ¶ 82).

     While this is only a motion to dismiss, looking at the grounds on which the OTS placed

the Bank in receivership, the Court cannot help but notice the fact that Defendant concealed his

100 percent stock ownership was not one of the reasons for the imposition of the receivership.

Thus, Plaintiffs fail to adequately plead loss causation regarding the stock ownership

misrepresentations.  Though it is arguable that Defendant's statements made Plaintiffs believe

they did not need to file a notice of change of control, this Court has already concluded that

Plaintiffs failed to plead transaction causation which is fatal to this argument claim because their

reliance was not reasonable.

Lastly, the following paragraphs set forth allegations relevant to the statute of limitations

for these misrepresentations:

89. Plaintiffs did not learn until the OTS issued its February orders closing
the bank, and taking enforcement and other actions against DeMane (Exhibits E,
F, G) that the transactions by which plaintiffs obtain their Bancorp stock were
change of control transactions that required prior OTS notice and approval.
DeMane consistently maintained that the transactions did not require such notice
and approval, based on the structure of the transactions, *i.e.*, a series of one-on-
one transactions between individuals who each purportedly owned no more than
9.9 percent of the stock and individual investors. In accordance with these
representations, DeMane pushed for closing the transactions quickly within a
timeframe that would not have allowed such notice and consent. Because
plaintiffs did not know that DeMane owned all of the stock, they had no reason to
know that a change of control was even involved. Further, the purchasers were all
unaffiliated individuals and thus had no reason to believe that the OTS might
consider their purchases collectively to involve a change of control requiring prior
OTS notice and approval. As further found by the U.S. District Court for the
District of New Jersey in its July 26 Opinion and Order, plaintiffs did not receive
any storm warnings that DeMane's representations were false.

92. Plaintiffs did not learn the truth concerning the misrepresentations
made by DeMane concerning his ownership of the Bancorp stock until September
2004. They did not learn that DeMane was the sole owner and seller of the
Bancorp stock they had purchased until the OTS publicly disclosed this
information in a September 29, 2004 press release by the OTS announcing the
Stipulation and Consent to Issuance of an Order of Prohibition and Order of
Assessment of a Civil Money Penalty, Exhibit I. DeMane had consistently
represented that the persons identified as the sellers on the purchase and sale
agreements were the owners and sellers of the stock, and plaintiffs had no reason
to believe that DeMane was lying in this regard. As further found by the U.S.
District Court for the District of New Jersey in its July 26 Opinion and Order,
plaintiffs did not receive any storm warnings that DeMane's representations were
false.

(*Osio* Compl. ¶¶ 89, 92).

The Court gave Plaintiffs an opportunity to amend their Complaint to properly allege compliance with the statute of limitations.  The *Osio* Plaintiffs have amended their Complaint, but their amendment still fails to set forth the reason why discovery was not made sooner, and does not state the diligent efforts they undertook in making such discovery.  Rolo, 845 F. Supp. at 243 n.38.  They have not complied with pleading the statute of limitations.

In sum, Plaintiffs have not sufficiently pled reasonable reliance or transaction causation as to the change of control misrepresentations, loss causation for the ownership misrepresentations, and the statute of limitations as to both misrepresentations.  Therefore, the allegations in the federal claims relating to ownership and change of control misrepresentations are dismissed.

**B.**    **The Financial Condition of the Bank and DeMane's Failure to Disclose that He Intended to Abscond with Over $4 Million**

Defendant also contends that Plaintiffs do not adequately allege that he misleadingly omitted information about the Bank's deposit base and liquidity, and that he intended to withdraw over $4 million and abscond with the money if there was OTS scrutiny.  Plaintiffs allege that on or about January 10, 2003, Defendant caused his agent to send the Bank's and Bancorp's financial statements to Plaintiff Osio and Davos, the financial consulting firm at which Osio is President.  (*Osio* Compl. ¶ 12).  "The financial statements and related materials state that (i) the 'financial statements are the responsibility of [Bancorp and Bank] management,' (ii) the financial statements 'have been prepared in conformity with generally accepted accounting principles,' and (iii) the financial statements 'present fairly, in all material respects, the

consolidated financial position of [Bancorp and the Bank]' as of the date of such financial

statements.  (*Osio* Compl. ¶ 13).

> Following execution of the confidentiality agreement, DeMane sent a computer
> disk containing more than 2,000 pages of financial and other information about
> Bancorp and the Bank dating back to the late 1990s, including, among other
> documents and information, audited and unaudited financial statements, official
> bank regulatory materials, and official Securities and Exchange Commission
> (SEC) filings.

(*Osio* Compl. ¶ 16). A Private Placement Memorandum ("PPM"), dated December 8, 2003, was

sent to Plaintiffs to solicit capital for the Bank's expansion into the South Florida market.

> The PPM also contained, among other things, affirmative statements
> concerning the Bank's mortgage and other business activities in and around the
> Newark, New Jersey location. Specifically, it stated that:
> - "Dollar savings is a federally chartered, community oriented savings
>   institution located in Newark, New Jersey. Dollar Savings is primarily
>   engaged in the business of attracting deposits from the general public in
>   the surrounding communities, and investing those funds primarily in first
>   mortgage loans on one to four-family residential real estate, and
>   commercial real estate loans, and to a lesser extent, multi-family real estate
>   loans." PPM at 1.
> - The Company has only one office. *See* PPM at 8.
> - "Through its office in Newark, Dollar Savings Bank serves communities
>   located in Essex County, New Jersey." PPM at 15.
> - The company's loans are secured by property located in New Jersey. *See*
>   PPM at 17.
> - "The Company conducts its business through its main office, located at
>   893 Franklin Avenue, Newark, New Jersey." PPM at 29.

(*Osio* Compl. ¶ 44).

As mentioned in the prior section, the February 13, 2004 OTS receivership order

contained the following specific findings of the Director of OTS (or his designee):

> - the Bank overall was in an unsafe and unsound condition to transact
>   business;
> - the Bank attempted to conceal that it operated a mortgage origination
>   business outside the Bank's geographic marketing area in various locations

-20-

around the United States;

- the Bank's mortgage operations engaged or attempted to engage in fraudulent and otherwise improper transactions;
- the Bank attempted to conceal from OTS's examiners the scope and extent of the mortgage origination business;
- the Bank concealed that control of the Bank had been transferred to a group or person (*i.e.*, plaintiffs and the Defrauded Investors) without first filing an application with or obtaining approval for a change of control from OTS;
- DeMane had withdrawn approximately $4 million in deposits from the Bank, severely reducing the Bank's deposit base and threatening its liquidity; and
- Bancorp had been seeking funds utilizing a private placement memorandum that failed to disclose material aspects of the Bank's operations.

(*Osio* Compl. ¶ 57).

On that same date, the OTS issued a Notice of Charges against Defendant.  (*Osio* Compl.,

Ex. F).  The Notice of Charges stated in relvant part that:

- DeMane had caused the Bank to conduct mortgage operations in Vicksburg, Mississippi, "a location outside Dollar's geographic lending area" without notifying OTS that it intended to conduct mortgage operations in that location (Notice of Charges ¶ 15);
- the Bank had undisclosed loan officers and/or agents in Somerset, and Lincoln Park, New Jersey and Tampa and Miami, Florida at "Satellite Operations" offices (Notice of Charges ¶¶ 16, 18);
- The failure to disclose the secret and unapproved mortgage broker operations and loan operations being conducted outside of New Jersey and representing instead that the Bank's business was conducted through its New Jersey office constituted "material misrepresentations [made] to investors" that "constitute violations of 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5" (Notice of Charges ¶ 21);
- The withdrawal of over $4 million from the Bank in early February "constitute[d] a breach of fiduciary duty" that "substantially weakens the financial condition of Dollar and prejudices the interests of its depositors (Notice of Charges ¶ 26)

(*Osio* Compl. ¶ 58).

-21-

In addition, the financial statements and other information provided by Defendant allegedly

> represented that the Bank obtained its deposits largely through retail deposit accounts opened and maintained by retail customers of the Bank. DeMane did not disclose that, as found by the OTS, the Bank's deposits, and thus its liquidity, were in fact highly dependent on money in accounts maintained or controlled by a single person, defendant Robert DeMane. As the OTS found, the $4 million that DeMane maintained in accounts at the Bank, and that he attempted to withdraw in February 2004, constituted almost twice the value of the Bank's core capital, and nearly 30 percent of its total assets as of December 30, 2004.

(*Osio* Compl. ¶71).

Lastly, although Plaintiffs did not identify it, the Court notes that the following paragraph in the Complaint supports Plaintffs' arguments: "Not surprisingly, DeMane did not disclose to plaintiffs or the Defrauded Investors that, if and when the Bank became the subject of OTS scrutiny, he intended to abscond with as much of the Bank's cash as he could."

(*Osio* Compl. ¶ 73).

Turning first to the alleged omission that Defendant would abscond with Bank money if he became the subject of OTS scrutiny. While this statement implies that Defendant would steal money, which does not appear to be the case, neither Plaintiffs' Complaint nor brief even address how the omission is misleading. "To be actionable, of course, a statement must also be misleading. Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988). "In circumstances where there is no insider trading or statute requiring disclosure, a duty to disclose likely exists only in the presence of 'an inaccurate, incomplete or misleading prior disclosure.'" Galati v. Commerce Bancorp, Inc., 2005 U.S. Dist. LEXIS 26851, at *20 (D.N.J. Nov. 7, 2005) (quoting Oran v. Stafford, 226 F.3d 275, 285-86 (3d

Cir. 2000)).  Furthermore, a failure to disclose corporate mismanagement or breaches of fiduciary duty are not actionable under federal securities law.  <u>Craftmatic Sec. Litig. v. Kraftsow</u>, 890 F.2d 628, 639 (3rd Cir. 1989) ("The line between a material nondisclosure and the nondisclosure of mere mismanagement is often difficult to draw . . . However, courts have been reluctant to permit a federal securities claim to stand when the plaintiff has failed to allege more than nondisclosure of mismanagement.").  "[T]he Third Circuit has observed that 'the nondisclosure of a statutory violation may be an omission of information necessary to make other statements not misleading,' suggesting that the failure to disclose criminal conduct is not necessarily misleading in itself. <u>Galati</u>, 2005 U.S. Dist. LEXIS 26851, at *25-26 (quoting <u>Craftmatic</u>, 890 F.2d at 640).

Plaintiffs have not asserted that Defendant was under a "duty" to disclose this alleged omission.  As a result, Defendant can only be liable under the Securities Act for the omission if Plaintiffs can point to a statement that is rendered inaccurate or misleading by the omission. Defendant cannot be liable under Rule 10b-5 for "absconding" with money in the absence of a misleading statement in conjunction with the conduct.  The Complaint and Plaintiffs' brief fail to set forth any misleading statement that would be rendered inaccurate by Defendant's act. Therefore, as a matter of law, the alleged omission that Defendant would abscond with the money is not an omission of a material fact.  As such, the Court need not address the remaining elements or pleading requirements of a claim under § 10(b) or Rule 10b-5.[6]

Next, the Court turns to the misleadingly omitted information about the Bank's deposit

---

[6]It is worth noting however that this allegation would have been dismissed for failure to plead the statute of limitations.  Nothing in the new paragraphs of the Second Amended Complaint address the $4 million which was "absconded" by Defendant.

base and liquidity.  Here, Plaintiffs rely on unidentified financial statements and related materials that purportedly presented a different picture of the Bank's deposit base and liquidity.  There is no indication of which documents the Plaintiffs are referring to in these allegations. They point to no specific statements, other than the December 8, 2003 PPM, which was issued after all stock sales were complete, allegedly repeated pre-sale statements, and did not occur in connection with the sale of the stock.  Therefore, Plaintiffs fail to point to a statement that is rendered inaccurate or misleading by the omission.  Furthermore, there is no allegation that at the time Plaintiffs entered into the sales transaction with Defendant that he controlled more than $4 million in deposits, and that the Bank's liquidity thus relied substantially on his assets.  Instead, the allegation is at the time of the OTS's intervention these were the facts.

Because Plaintiffs cannot establish a materially misleading omission as to the financial condition of the Bank or Defendant's intent to abscond with money if there was OTS scrutiny, the Court will not address scienter, reliance, or causation.  These claims are accordingly dismissed.

**C.     The Bank's Illegal Mortgage Operations and the IndyMac Bank Claims**

Defendant also alleges that Plaintiffs do not sufficiently plead that, prior to Plaintiffs' purchasing their Bank stock, that he failed to disclose that the Bank was engaged in mortgage operations outside of the bank's lending area or that he failed to disclose that IndyMac Bank had asserted claims of $900,000 against the Bank.  The following are the relevant allegations that Plaintiffs identify as setting forth these omissions:

> Within two weeks of the February 11 meeting, . . . DeMane again
> represented to Osio that the Bank and Bancorp met the investment objectives of

Osio and his clients, specifically, that the institutions were financially sound with a strong and healthy deposit base, were in good standing with applicable regulators, and would be able to branch into and serve the South Florida market.

(*Osio* Compl. ¶¶ 21, 11).

Because the Defrauded Investors were primarily interested in the Bank's ability to branch into the South Florida market, they requested all relevant information about the Bank's current financial and regulatory status that would allow such branching operations. In response, DeMane repeatedly provided materially false and incomplete information to the Defrauded Investors.

(*Osio* Compl. ¶ 24).

Plaintiffs rely on statements in the PPM that indicated the bank had only one office, located in Newark, New Jersey and that the Bank's loans were secured by property in New Jersey. (*Osio* Compl. ¶ 44). "The PPM also contained statements and representations concerning the Bank's relationship with banking regulators and stated that the Bank was in compliance with applicable laws, rules and regulations. *See* PPM at 34-40. There was no disclosure of any non-compliance by the Bank with applicable regulations, past or present, or of any supervisory orders issued by the OTS." (*Osio* Compl. ¶ 53).

[T]he financial statements and other financial information did not disclose that IndyMac Bank had claims against the Bank for more than $900,000, a liability whose value comprised almost 10 percent of the Bank's total deposits, 25 percent of the Bank's liquid assets (*i.e.*, cash, deposits and investment securities), and more than 40 percent of its core capital. Further, the financial reports did not disclose that the money obtained by the Bank from IndyMac involved the sale of loans secured by properties that were overvalued as a result of a fraudulent property-flipping scheme.

(*Osio* Compl. ¶ 72).

Once again, as stated above, Plaintiffs fail to point to a particular statement, made prior to the stock sale, that is rendered inaccurate or misleading by a material omission – here the

omission of the alleged IndyMac Bank claims.  It is not enough to state in sweeping fashion that "financial statements and other financial information did not disclose that IndyMac Bank had claims against the Bank." (*Osio* Compl. ¶ 72).  The failure to disclose a civil action is not in itself a material omission.  Galati, 2005 U.S. Dist. LEXIS 26851, at *25-26.  There is not even an assertion that Plaintiffs inquired about pending litigation prior to purchasing the stock.  Because Plaintiffs have not alleged a material omission the Court will not address the remaining elements.

The final allegation is that Defendant failed to disclose that the Bank was engaged in mortgage operations outside of the bank's lending area.  In this section of their brief, Plaintiffs state that Defendant and his agent represented that the Bank had the capability of opening branches in South Florida.  (Pl. Opp. Br. at 34).  Plaintiffs' brief also references "financial statements [that] represented that they fairly presented the financial position of the Bank and DBI." (Id.).  Even though Plaintiffs allege generally that Defendant "falsely represented that the Bank's operations were conducted from its one office in Newark, New Jersey," (*Osio* Compl. ¶ 74), they never state any details pertaining to this statement that date back to before the consummation of the sale of stock.  They also don't state that a lack of offices in other places would be material to their decision to purchase the stock.  In fact, it would seem to be beneficial to Plaintiffs since they wanted to open an office in South Florida to already have an office in Miami.  Although these allegations are sparse, and the Court is not convinced that Plaintiffs have alleged a material omission, the Court will press on.

While it is arguable whether Plaintiffs have adequately pled reliance, they have failed to adequately allege scienter.  Contrary to Plaintiffs' statement, which fails to cite to a paragraph in the Complaint, that "the Complaint makes clear throughout that the 'Satellite Operations' were

ongoing and undisclosed at the time the plaintiffs purchased their DBI stock," (Pl. Opp. Br. at

37), the Court can find no such allegation in the Complaint.  Without such an allegation there can

be no accusation that Defendant made any false representation at the time of the sale.

Furthermore, a review of the amended allegations that purport to comply with pleading

the statute of limitations reveal that they still fall short.  (*Osio* Compl. ¶¶ 88, 91).  These

allegations do not set forth the reason why discovery was not made sooner, and do not state the

diligent efforts they undertook in making such discovery.  Rolo, 845 F. Supp. at 243 n.38.

Since Plaintiffs have failed to allege a material omission regarding the IndyMac Bank

claims, scienter with respect to the mortgage operations, and the statute of limitations as to both

claims, these allegations are dismissed.

In conclusion, Count I is dismissed in its entirety.

## II.    Motion To Dismiss The State Law Claims[7]

---

[7]In the introduction to their opposition brief, Plaintiffs state "*It's like déjà vu all over again.*"  (Pl. Opp. Br. at 1).  Defendant also agrees with this statement.  (Def. Reply Br. at 1).  Despite this Court's general distaste for such gratuitous comments, the Court is compelled to agree with the parties in this instance.  However, this time it is Plaintiffs that have done exactly that which this Court previously held precluded an analysis of Defendant's motion to dismiss for failure to plead the state law claims with particularity – that is Plaintiffs have now improperly clumped their analysis of the federal securities claims with their analysis of the state law claims.  As this Court stated in the March 29 Opinion and Order addressing Defendant's motion for reconsideration on this issue:

> The state law claims are different than the federal securities fraud claim and a conclusory argument asking this Court to dismiss the former claims for the same reasons as the latter is asking the Court to generalize about these claims.  It is of no moment that they may or may not share some common elements.

(March 29 Op. & Order at 7).  Furthermore, Plaintiffs' complaint that Defendant's arguments as to the *Osio* Plaintiffs' state law claims should be rejected because Defendant's brief filed against the *Osio* Plaintiffs merely incorporated by reference the twenty-seven pages of arguments made in his brief filed against the *Diaz* Plaintiffs, thus violating, or at the very least avoiding, the Court's page limits.  Nevertheless, for purposes of judicial economy and to avoid needless litigation, the Court will address Defendant's arguments regarding pleading the state law claims

Having reviewed the factual allegations behind each count in the Complaint, the Court

finds that, with the exception of the indemnification claim, "a core theory of fraud permeates the

entire Second Amended Complaint and underlies all of Plaintiffs' claims." Cal. Pub. Employees'

Ret. Sys. v. Chubb Corp., 394 F.3d 126, 160 (3d Cir. 2004).  Although fraud is not an element in

every cause of action, the Counts II through V are grounded in allegations of fraud and are thus

subject to Fed. R. Civ. P. 9(b).  Id. at 160-63.  The alleged misstatements and misleading

information arise out of allegations that the purchase of the bank stock did not require filing

change-of-control documentation with banking authorities, that the bank was in compliance with

federal banking laws, a failure to disclose that the deposits at the bank were largely under the

control of Defendant, a failure to disclose that Defendant would abscond with bank funds, and a

failure to disclose that IndyMac had a claim against the bank for over $900,000.  Therefore, these

claims must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).

First, Defendant contends that Plaintiffs fail to plead these representations and omissions

with the requisite particularity required by Fed. R. Civ. P. 9(b).  He alleges that Plaintiffs fail to

plead the "who, what, when, where and how" of the allegedly fraudulent representations and

omissions.  In an attempt to vitiate the entire *Diaz* Complaint, Defendant asserts that the *Diaz*

Plaintiffs do not assert that any of them ever spoke to DeMane, received documents from

DeMane, or received from Plaintiff Osio any documents or specific communications of DeMane.

As an initial matter, the Court agrees with Defendant that the *Diaz* Complaint generally

_____

with particularity because it is likely the Court would have extended the page limits in this
particular instance had Defendant made such a request.  Lastly, the Court rejects Plaintiffs'
argument that Fed. R. Civ. P. 12(g) requires this Court to deny the motion with respect to the
state law claims.  Since this Court has not definitively ruled on Plaintiffs' state law claims,
Defendant is not precluded from raising them in the present motion.

lacks allegations about direct communications between them and Defendant DeMane.  Though

the *Diaz* Complaint does rely upon Osio's communications with DeMane on the basis that Osio

was their agent-in-fact in the transactions.  Although each *Diaz* Plaintiff need not replead general

allegations regarding Defendant's scheme, each individual named Plaintiff should each satisfy

Rule 9(b)'s requirements independently so as to sufficiently apprise Defendant of their exact

grounds for relief and the specific conduct that they allege.  In re Prudential Ins. Co. of Am. Sales

Practices Litig., 975 F. Supp. 584, 597 (D.N.J. 1996).

A review of the body of the *Diaz* Complaint itself reveals, not only a lack of specificity,

no information as to the transmission of these communications from Osio to the *Diaz* Plaintiffs.

The Complaint for the *Diaz* Plaintiffs is nearly identical to that of Osio.  Some of the *Diaz*

Plaintiffs have, however, attached Affidavits to their Complaint, which were incorporated by

reference.  (*Diaz* Compl. ¶ 21).  In this Court's mind, the Affidavits support the allegations of

those that submitted them.  Those that submitted an Affidavit[8] indicated that the

misrepresentations made to Osio, and then to them, included "(a) The name and purported

signatures of the individual ostensible owners of shares of stock of the Dollar Bancorp, Inc; and,

(b) Information relating to the 'sound' financial condition and operation of Dollar Bancorp, Inc."

(*Diaz* Compl., Ex. A).  Since these Affidavits don't address the additional allegations, the Court

concludes that the *Diaz* Plaintiffs that submitted Affidavits attached to their First Amended

---

[8]Plaintiffs Christian Rodriguez, Oscar Perez Croes - Authorized Representative of Rodeo Oversea Inc., Filippo Sindoni, Juan Simon Mendoza, Augusto Perez Gomez (since there is no plaintiff by this name the Court assumes the Affidavit is of Augusto Perez-Rendiles) - Authorized Representative of Castany Investment Ltd., Ricardo R. Montero - Authorized Representative and President of Datapro, and Celestino Diaz provided Affidavits which were attached to their First Amended Complaint.

Complaint are alleging only these two misrepresentations.  Therefore, any other misrepresentations or omissions are dismissed for failure to plead with particularity and for failure to state a claim.

Notably, however, Plaintiff Christian Rodriguez purchased his stock from DeMane, thus there can be no challenge as to the ostensible owner that sold him stock.  Thus, he can only be challenging the misrepresentations regarding the financial condition of the Bank.  What is more, Plaintiff Ricardo R. Montero - Authorized Representative and President of Datapro purchased half the shares of Plaintiff Rodeo Oversea, Inc. on an unspecified date.  (*Diaz* Compl. ¶ 11). Plaintiff Montero fails to specify any of the communications to him upon which he relied in purchasing stock from one of the Plaintiffs.  He is in a different situation than the other Plaintiffs and has not demonstrated any reason for this Court to permit him to rely on the allegations made by the other Plaintiffs.  Therefore, Montero and the remaining Plaintiffs that did not submit an Affidavit[9] are dismissed for failure to plead fraud with particularity and for failure to state a claim.

The Court now turns to the remaining claims in this case.

**A.      State Law Fraud Claims (Counts II, III, IV and V)**

*1.      Common Law Fraud (Count II)*

Count II alleges Common Law Fraud.  "To prevail on a claim of common law fraud, plaintiffs must prove: (1) a material representation of a past or present fact, (2) knowledge by the

---

[9]Plaintiffs Carlos Alfredo Garcia, The Randall Investment Group, Nelly Susana Alvarez, Armando De Armas, Oliver Dow, Carlos Vera, Jenner Finance Corp., Edgar Bossio, AME Holdings, Inc., Ilio Ulivi, Durban Associated, S.A., Maria de Lourdes de Icaza, Ardino International, Inc. are dismissed.

defendant of its falsity, (3) intention that it be relied upon, (4) their own reasonable reliance upon it, with (5) resulting damages." Silverman, 1999 U.S. Dist. LEXIS 17703, at *30-31) (citing Gross v. Johnson & Johnson-Merck Consumer Pharm. Co., 696 A.2d 793, 796 (N.J. Sup. Ct. App. Div. 1997)); see also May Dep't Stores Co. v. Int'l Leasing Corp., 1 F.3d 138, 141 (2d Cir. 1993).

The Complaint alleges that the Defendant fraudulently failed to disclose: (1) the true owner and seller of the Bancorp shares that Plaintiffs acquired, (2) the mortgage activities of the Bank in areas outside of Newark, (3) the transaction would amount to a change of control and would require regulatory approval, (4) that he intended to abscond with $4 million if he came under OTS scrutiny, (5) the claims against the Bank by IndyMac Bank in excess of $900,000, and (4) the true financial condition of Bank's deposit base and liquidity.

As the Court concluded in discussing Count I, Plaintiffs have adequately pled the misstatements regarding change of control, ownership, and the mortgage operations. Thus that aspect of the particularity requirement would likewise be met under Fed. R. Civ. P. 9(b). The Court's decision also remains the same as to the other allegations involving omissions because Plaintiffs fail to point to a duty to disclose or a statement that is rendered inaccurate by the omission of a material fact.

With respect to the second prong, Plaintiffs have not adequately alleged Defendant's knowledge about the Bank's mortgage operations because they fail to particularize any details that the Defendant knew at the time of the stock sale that the Bank was only doing business in New Jersey and not other states. The Court does conclude, however, under Rule 9(b) that Plaintiffs adequately pled Defendant's knowledge of the falsity of his statements regarding the

change of control and ownership of the Bank.  Based on Defendant's prior attempts to sell stock he allegedly knew that regulatory approval would be required.  It also appears undisputed that he knew that he was the sole shareholder when he sold stock under the names of fictitious individuals.  For purposes of this Rule, Plaintiffs do also adequately plead their own reasonable reliance on Defendants representations about change of control requirements and, with the exception of Plaintiff Christian Rodriguez, the owners of the stock.

Therefore, the common law fraud claim has been pled with sufficient particularity as to only the change of control and ownership allegations.  They have amply set forth the who, what, when, where and how of these claims to satisfy this Court.  For the same reasons, these two allegations are the only ones that adequately allege each element of a claim for common law fraud and, as such, state a claim upon which relief can be granted.  The remaining allegations are dismissed.

### 2.    *New Jersey Uniform Securities Laws, N.J.S.A. § 49:3-71 (Count III)*

In Count III, Plaintiffs allege that DeMane violated the New Jersey Uniform Securities Act ("NJUSA"), N.J.S.A. § 49:3-71(a)(2), (3) and (4).  Pursuant to this statute, "Any person who offered, sold or purchased a security or engaged in the business of giving investment advice to a person in violation of paragraph (1), (2), (3), (4) or (5) of subsection (a) of this section is liable to that person, who may bring an action either at law or in equity to recover the consideration paid for the security or the investment advice and any loss due to the advice, . . . ."  N.J.S.A. § 49:3-71(c).  The portions of the NJUSA at issue, N.J.S.A. § 49:3-71(a)(2), (3) and (4), provide:

> (2) Offers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made,

not misleading (the buyer not knowing of the untruth or omission), or
(3) offers, sells or purchases a security by employing any device, scheme, or
artifice to defraud, or
(4) offers, sells or purchases a security by engaging in any act, practice or course
of business which operates or would operate as a fraud or deceit upon any person.
Plaintiffs must prove the misrepresentations and their own ignorance of the truth.

Kaufman v. I-Stat Corp., 165 N.J. 94, 112 (2000).  This is a lower burden than proving reliance

in common law fraud.  Id.

For the same reasons as set forth above, Plaintiffs have adequately pled only the change

of control and ownership allegations.  Only these allegations are sufficient to survive a motion to

dismiss.

### 3.      *Unjust Enrichment (Count IV)*

Count IV of the Complaint asserts a claim for unjust enrichment.  The basis for this claim

is that as a result of his wrongful acts Defendant benefitted from Plaintiffs' purchasing shares of

Bancorp stock, which deprived Plaintiffs of the benefits accruing to ownership of the stock in the

Bank.  As such, Defendant's retention of Plaintiffs' payments would be unjust.  "To succeed on

an action for unjust enrichment, a plaintiff must establish that a defendant received a benefit, and

that the defendant's retention of that benefit would be unjust."  Stearns & Foster Bedding Co. v.

Franklin Holding Corp., 947 F. Supp. 790, 812 (D.N.J. 1996) (citing VRG Corp. v. GKN Realty

Corp., 135 N.J. 539, 554 (1994)).  Defendant argues that the doctrine of unjust enrichment is an

equitable remedy that is only available when there is no adequate remedy at law.  Duffy v.

Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 814 (D.N.J. 2001).

Plaintiffs are correct that they are entitled to plead alternate theories and remedies, Fed.

R. Civ. P. 8(a), and at this stage of the proceedings it would be premature to dismiss this count

solely on this basis.  Thus, Defendant's motion is denied, and to the extent the unjust enrichment

claim is premised on averments of fraud, only the averments relating to change of control and

ownership of the stock may be considered part of the unjust enrichment claim.

### 4.        *Rescission Based on Equitable Fraud (Count V)*

The Fifth Count is a claim for rescission of the purchase and sale agreements based on

equitable fraud.  The elements of a claim for equitable fraud under New Jersey law are (1) a

material misrepresentation of a presently existing or past fact; (2) the maker's intent that the

other party rely on it; and (3) detrimental reliance by the other party."  First Am. Title Ins. Co. v.

Lawson, 827 A.2d 230, 237 (N.J. 2003).  Defendant argues that this claim should be dismissed

for failure to meet the heightened pleading requirements of Rule 9(b).  Rescission is an equitable

remedy that is only exercised when there is no adequate remedy at law.  Walter v. Holiday Inns,

Inc., 784 F. Supp. 1159, 1166 (D.N.J. 1992) (finding that an adequate remedy at law existed

because the plaintiffs could present evidence of the quantum of monies they've been deprived

and be fairly compensated).  Also, rescission is inappropriate when it is not possible to restore

the status quo ante.  Id.; Hilton Hotels Corp. v. Piper Co., 519 A.2d 368 (N.J. Super. Ct. Ch. Div.

1986) (dismissing claim for rescission where parties could not realistically or fairly be returned to

the position they held six years prior).

While, for all the reasons expressed above, Plaintiffs do state a claim for equitable fraud

with respect to the change of control and ownership allegations, they nevertheless fail to state a

claim for recsission.  Since the Bank was placed in FDIC receivership for liquidation, it would be

impossible to restore the status quo ante.  As such, the claim for rescission based on equitable

fraud fails to state a claim upon which relief can be granted and is dismissed.

**B.      Indemnification (Count VI)**

Count VI is an allegation of Defendant's violation of the Purchase and Sale Agreement's indemnification clause.  Plaintiffs allege that Paragraph 5.2 of the Purchase and Sale Agreement includes an indemnification clause stating that Seller will indemnify the Buyer for "[a]ny Breach of any representation or warranty made by Seller . . . ."  The allegation is premised on (1) the use of fictitious names in the purchase, (2) the later discovery of an encumbrance when it was specifically represented that the shares were not encumbered and (3) the representation that the sale was not in violation of any law.  This Court previously dismissed the aspect of this claim involving an undisclosed encumbrance because nowhere in the Complaint did Plaintiffs explain how the shares of stock were encumbered.  Furthermore, this claim is not subject to Rule 9(b) because the allegations are not premised on any averments of fraud.  They are premised on a demand for indemnification based on the fact that Defendant used fictitious names in the sale of the stock to Plaintiffs and that he represented that the sale did not violate any law.  Therefore, Plaintiffs have stated a claim for indemnification upon which relief may be granted and the claim will not be dismissed at this time.

Overall, in light of this Court's present and prior Opinions, the following are the only claims which remain in this case:

- Counts II (Common Law Fraud), III (New Jersey Uniform Securities Laws, N.J.S.A. § 49:3-71), and IV(Unjust Enrichment) involving averments relating to change of control and ownership of the stock;

- Count VI (Indemnification) as it is premised on the use of fictitious names in the purchase and the representation that the sale was not in violation of any law.

In addition, these claims remain only with respect to the following Plaintiffs:

•       *Osio* Plaintiffs: David J. Osio and Vaduz Financial Corporation

•       *Diaz* Plaintiffs:  Oscar Perez Croes - Authorized Representative of Rodeo Oversea
        Inc., Filippo Sindoni, Juan Simon Mendoza, Augusto Perez Gomez (since there is
        no plaintiff by this name the Court assumes the Affidavit is of Augusto Perez-
        Rendiles) - Authorized Representative of Castany Investment Ltd., and Celestino
        Diaz, *but only as to averments involving the stock ownership and financial
        condition of the bank allegations*; and Christian Rodriguez, *but only as to
        averments involving the financial condition of the bank allegations*

All other claims and Plaintiffs are accordingly dismissed for the reasons set forth above.


## CONCLUSION

For the foregoing reasons, it is on this 19th day of June 2006, hereby **ORDERED
THAT**:

1.      Defendant's motion to dismiss the Complaint in *Diaz, et al. v. DeMane,* Civil
        Action No. 05-CV-2280, [CM/ECF Docket Entry # 33], is granted in part and
        denied in part;

2.      Defendant's motion to dismiss the Complaint in *Osio, et al. v. DeMane,* Civil
        Action No. 05-CV-2283, [CM/ECF Docket Entry # 40], is granted in part and
        denied in part;

3.      No further dispositive motions will be permitted without leave of this Court.


                                         /s/ Jose L. Linars
DATED: June 19, 2006                     JOSE L. LINARES,
                                         UNITED STATES DISTRICT JUDGE