NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELESTINO DIAZ, FILIPPO SINDONI, CARLOS ALFREDO GARCIA, RANDALL INVESTMENT GROUP, NELLY SUSANA ALVAREZ, ARMANDO DE ARMAS, OSCAR PERREZ CROES, RODEO OVERSEAS, INC., JUAN SIMON MENDOZA, AUGUSTO PEREZ-RENDILES, CASTANY INVESTMENT, LTD., OLIVER DOW, CARLOS VERA, JENNER FINANCE CORP., EDGAR BOSSIO, AME HOLDINGS, INC., ILIO ULIVI, DURBAN ASSOCIATED, S.A., CHRISTIAN RODRIGUEZ, ARDINO INTERNATIONAL, INC., RICARDO MONTERO, MARIA de LOURDES de ICAZA, DATAPRO, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT W. DEMANE, <br><br> Defendant. | Civil Action No.: 05-2280 (JLL) <br><br><br> **OPINION** |
| DAVID J. OSIO, VADUZ FINANCIAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT W. DEMANE, <br><br> Defendant. | Civil Action No.: 05-2283 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court on the motion of David J. Osio, et al. ("Plaintiffs") to vacate the January 10, 2007, Order of Judge Cecchi requiring Plaintiffs to place certain funds released by the Federal Deposit Insurance Corporation (the "FDIC") in escrow. There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Plaintiff's motion to vacate is denied.

## BACKGROUND

As the facts of this case have been set out in detail in prior opinions of this Court, only the facts germane to the present motion will be set forth below.

The present securities fraud action arises out of a series of transactions during 2003, in which Plaintiffs acquired 98% of the stock of Dollar Bancorp, Inc. ("Dollar Bancorp"), the holding company of Dollar Savings Bank, from eleven purported stockholders of Dollar Bancorp. (Opinion of June 19, 2006 at 3.) At the time of the stock transactions, Robert W. DeMane ("DeMane" or "Defendant") served as president, chief executive officer, and director of both Dollar Bancorp and Dollar Savings Bank. (Id. at 3-4.)

DeMane continued to serve in his various corporate positions until early 2004. (Id. at 4.) Irregularities in the activities of Dollar Savings Bank, however, resulted in the appointment of the FDIC as receiver of Dollar Savings Bank on February 14, 2004. (Id.)

On April 27 and 28, 2005, Plaintiffs filed two suits against DeMane contesting the validity of their stock purchases in Dollar Bancorp; both of these were later consolidated into one action by the Court.    Plaintiffs and DeMane entered into settlement negotiations on May 4, 2006. (Def. Opp. Br. at 3.) Despite initially agreeing

to terms, further disagreement broke out among the parties. (Def. Opp. Br. at 3-6.)

On November 1 and 3, 2006, Plaintiffs filed motions to enforce the settlement agreement. While the motions to enforce the settlement agreement were pending, the FDIC ended its receivership of Dollar Savings Bank. After winding up the business of Dollar Savings Bank and paying out to its depositors and creditors, the FDIC sought to turn over the remaining assets of Dollar Savings Bank (the "surplus funds") to its sole stockholder, Dollar Bancorp. (Seaton Letter of Jan. 5, 2007.) The surplus funds amounted to $940,299.99. (Id.) On January 10, after several letters were sent to this Court by the parties, Magistrate Judge Cecchi issued an order placing the surplus funds in escrow. (Order of Jan. 10, 2007.) Magistrate Judge Cecchi subsequently denied the Plaintiffs' motion to enforce the settlement agreement on June 11, 2007. (Order of June 11, 2007.)

### DISCUSSION

The Plaintiffs move to vacate the Order of Magistrate Judge Cecchi dated January 10, 2007, placing the surplus funds distributed by the FDIC to Dollar Bankcorp in escrow. While the Plaintiffs style the present motion as one to vacate the Order of January 10, 2007, because the Order was issued below as part of a pretrial determination by Judge Cecchi, this Court will construe the instant motion as one appealing from an order of a Magistrate Judge under Federal Rule of Civil Procedure 72.

**A.     Legal Standard**

A United States Magistrate Judge may hear and determine any [non-dispositive] pretrial matter pending before the Court pursuant to 28 U.S.C. § 636(b)(1)(A). The district court will only reverse a magistrate judge's decision on these matters if it is

"clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. Bowen v. Parking Auth. of City of Camden, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002). A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. See, e.g., Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

In matters where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion. See, e.g., Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion"). "This deferential standard is 'especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings.'" Lithuanian Commerce Corp., 177 F.R.D. at 214 (quoting Pub. Interest Research Group v. Hercules, Inc., 830 F. Supp. 1525, 1547 (D.N.J. 1993), aff'd on other grounds and rev'd on other grounds, 50 F.3d 1239 (3d Cir. 1995)). However, a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo. See Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); Lo Bosco, 891

F. Supp. at 1037.

**B.     Jurisdiction**

Several of the Plaintiffs' challenges to the January 10, 2007, Order of Judge Cecchi relate to the subject matter jurisdiction of this Court over the surplus funds.[1]  (Pl. Br. at 5-6, 8-9.)  As questions of jurisdiction are issues of law, this Court conducts a <u>de novo</u> review of such issues on appeal from the order of a Magistrate Judge.  <u>Emerald Investors Trust v. Gaunt Parsippany Partners</u>, 492 F.3d 192, 197 (3d Cir. 2007); <u>Haines v. Liggett Group, Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992).

   **1.     The Effect of 12 U.S.C. § 1821(d)(13)(D)**

Plaintiffs claim that this Court lacks jurisdiction over the surplus funds distributed by the FDIC to the shareholders of Dollar Savings Bank.  Specifically, Plaintiffs claim that 12 U.S.C. § 1821(d)(13)(D) divests this Court of jurisdiction with respect to the distribution of the surplus funds to Dollar Bancorp by the FDIC, and the order placing these funds in escrow should be vacated for that reason.

The statute in question reads as follows:

> (d) Powers and duties of Corporation as conservator or receiver . . .
> (13) Additional rights and duties . . .
> (D) Limitation on judicial review
> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
> **(i)** any claim or action for payment from, or any action

---

[1]As the issue of subject matter jurisdiction may arise at any time in litigation, may not be waived, and go to whether a court possesses the power to hear an issue, the Court elects to discuss and rule on the jurisdictional questions presented in this motion despite the failure of the Plaintiffs to otherwise comply with Federal Rule of Civil Procedure 72 and Local Rule of Civil Procedure 72.1, noted below in Parts C and D.  <u>See</u> <u>Huber v. Taylor</u>, 469 F.3d 67, 75 (3d Cir. 2006) (asserting inability to waive subject matter jurisdiction); <u>In re Kaiser Group Intern. Inc.</u>, 399 F.3d 558, 565 (3d Cir. 2005) (stating that subject matter jurisdiction may be raised at any time).

> seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> **(ii)** any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The "Corporation" in the statute is defined as the FDIC. 12 U.S.C. § 1820a(d)(3). Plaintiffs claim that the order placing the surplus funds in escrow interfered with the action of the FDIC in paying out the surplus funds to Dollar Bancorp, sole shareholder of Dollar Savings Bank. (Pl. Br. at 6.)

In order to find that this Court lacks jurisdiction over the surplus funds under § 1821(d)(13)(D), this Court would have to find that this case contained a claim for payment from Dollar Savings Bank, constituted a dispute over the assets of Dollar Savings Bank, or amounted to a claim against Dollar Savings Bank or the FDIC as receiver. The Third Circuit has endorsed such a limited reading of the scope of § 1821(d)(13)(D) when interpreting subparagraph (i):

> we also point out that section 1821(d)(13)(D) bars jurisdiction only over "any claim or action for payment from, or any action seeking a determination of rights with respect to, *the assets of any depository institution* for which the Corporation has been appointed receiver."

<u>Resolution Trust Corp. v. W.W. Dev. & Mgmt., Inc.</u>, 73 F.3d 1298, 1309 (3d Cir. 1996) (emphasis in original). The Plaintiffs' own version of the facts included in their Reply Brief on the instant motion make further analysis of § 1821(d)(13)(D) unnecessary, as Plaintiffs aver that the surplus funds were paid by the FDIC to Dollar Bancorp, not Dollar Savings Bank. The plain meaning of § 1821(d)(13)(D) does not cover any disposition of assets possessed by a <u>shareholder</u> of a depository institution; once the FDIC paid the funds out to Dollar Bancorp, § 1821(d)(13)(D) ceased to apply. (Pl. Reply Br. at 2.) The

Plaintiffs themselves claim that "the FDIC's decision to distribute was wholly independent of this litigation," and that the FDIC paid the surplus funds directly to Dollar Bancorp, preventing the surplus funds from being the assets of a depository institution. (Id.)  Furthermore, Plaintiffs claim that "[t]he independent action of the FDIC had no linkage whatsoever to the litigation dispute before the Court," effectively conceding that the FDIC's action as receiver in distributing the funds was not disputed.  12 U.S.C. § 1821(d)(13)(D); Pl. Reply Br. at 2.  As Plaintiffs concede that neither their complaint nor the instant motion offer any grounds to predicate a denial of jurisdiction under § 1821(d)(13)(D), their motion to vacate fails with respect to this argument.

### 2. Subject Matter Jurisdiction of This Court Over the Surplus Funds

Plaintiffs further claim that this Court lacks subject matter jurisdiction over the surplus funds because the case before the Court is unrelated to the surplus funds, and this Court is, therefore, prevented from asserting jurisdiction over the funds by Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.  527 U.S. 308 (1999); Pl. Br. at 8.  More specifically, Plaintiffs allege that the Court's order placing the surplus funds in escrow amounted to an injunction against a non-party from disposing of its assets prior to a money-judgment determination in the present matter.  (Pl. Br. at 8.)  Defendant argues, in a footnote, that Plaintiffs' reliance on Grupo Mexicano mischaracterizes the instant circumstances and that the Order placing the surplus funds in escrow is not an injunction. (Def. Br. at 11-12 n.3.)

Plaintiffs misstate the holding of Grupo Mexicano in claiming that it divests this Court of jurisdiction over the surplus funds.  In Grupo Mexicano, the Supreme Court held

that a plaintiff who requested only a remedy at law, breach of contract damages, could not obtain a preliminary injunction against the assets of a debtor against whom it had no judgment.  527 U.S. at 312, 333.  Here, Plaintiffs have requested the equitable relief of rescission in their complaint; unlike the Grupo Mexicano plaintiffs, they have placed their claim squarely within the equity jurisdiction of the federal courts.  See, e.g., Glick v. Campagna, 613 F.2d 31, 36 (3d Cir. 1979) (permitting equitable relief of rescission in securities claim); Osio's Sec. Am. Comp. at 30 (requesting rescission in securities claim).  The Plaintiffs in this case have failed to meet one of the basic premises of Grupo Mexicano, in which the Supreme Court distinguished a cause of action at equity from one at law:

> After deciding that the Securities Act permitted equitable relief, we concluded that the bill stated a cause of action for the equitable remedies of rescission of the contracts and restitution of the consideration paid, and that the preliminary injunction was a reasonable measure to preserve the status quo pending final determinations of the questions raised by the bill. . . .
>
> The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt.

Grupo Mexicano, 527 U.S. at 325 (discussing Deckert v. Independence Shares Corp., 311 U.S. 282 (1940), as distinct from Grupo Mexicano).  This Court finds, under the Supreme Court's distinction between cases requesting legal relief and cases requesting equitable relief, that jurisdiction is proper in the instant matter.  Id. at 324-25.  Plaintiffs have placed their claim within the scope of the equitable power of this Court in their complaint, and cannot now claim that the Order placing the surplus funds in escrow, even should it constitute a preliminary injunction, is barred by the limitations of the subject

matter jurisdiction of a district court's equitable power.  Id.; Hilton Hotels Corp. v. Piper Co., 519 A.2d 368, 372 (N.J. Super. Ct. App. Div. 1986) ("[r]escission, of course, is an equitable remedy"); Osio's Sec. Am. Comp. at 30, 33, 34, 35.

### 3. Supplemental Jurisdiction of This Court

Plaintiffs also argue that this Court's jurisdiction over the surplus funds is based upon a potential state law claim that DeMane would possess as a 2% stockholder of Dollar Bancorp upon the dissolution of Dollar Bancorp, and that this Court lacks supplemental jurisdiction to hear such a complaint.  (Pl. Br. at 9.)  They base this argument on the statutory text of 28 U.S.C. § 1367(a), granting jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Plaintiffs cite no caselaw to support their contention, and Defendant appears to afford no space at all in its brief to refuting this argument.  Fortunately for Defendant, its failure to oppose Plaintiffs' argument with regard to supplemental jurisdiction has no effect of the outcome of this motion, as Plaintiff has failed to meet its burden in providing a basis in law for this Court to rule in its favor on the issue.  L. Civ. R. 72.1(c)(1)(A).

The plain statutory language of § 1367 limits the supplemental jurisdiction of this Court to exercising such jurisdiction over "claims."  28 U.S.C. § 1367(a)-(c).  Cognizant as it is that "[a] single definition of claim cannot resolve the variables presented by each case," this Court will not engage in a an attempt to pin down the use of the word in § 1367 to a single meaning, but it does note that neither of the two definitions of "claim" in Black's that might apply to the supplemental jurisdiction statute support Plaintiffs'

argument.  Sussex Drug Prod. v. Kanasco, Ltd., 920 F.2d 1150, 1154 (3d Cir. 1990).  The two definitions in question are: "[a] demand for money and property to which one asserts a right" and "[a]n interest or remedy recognized at law."  Black's Law Dictionary 240 (7th ed. 1999).  Read in the context of practice under the Federal Rules of Civil Procedure, both of these concepts appear to be contingent on a "claim" being recognized and articulated by the party capable of bringing it.  Fed. R. Civ. P. 8(a), 13.  See also Exxon Mobil Corp. v. Allapattah Serv., Inc., 545 U.S. 546, 558-60 (2005) (discussing supplemental jurisdiction purely in terms of "claims").

While the filings in the case by both Plaintiffs and Defendant have been voluminous, this Court is not aware of a "claim" by DeMane to a direct or derivative interest in the surplus funds, other than the argument in his brief opposing the current motion.  (Def. Opp. Br. at 12-13.)  (Indeed, to the knowledge of this Court, Defendant has not yet filed an answer or any counterclaims against the Plaintiffs.)  The gist of Defendant's claim to the surplus funds—or any assets of Dollar Bancorp—in his Opposition Brief is that the current action, if carried to a conclusion, will determine the proportion of shareholder interest in Dollar Bancorp held by all parties to the suit.  (Id.) While this could be read as a subtle statement of a derivative interest in an asset of Dollar Bancorp, this argument is better seen as a reformulation of the Plaintiffs' position in this case: that Plaintiffs are entitled to rescission of their agreements to purchase shares in Dollar Bancorp.  (Osio's Sec. Am. Comp. at 30, 33, 34, 35.)  Simply restating the position of the Plaintiffs in this manner does not create a legal claim requiring analysis to determine whether or not it falls within the supplemental jurisdiction of this Court.

Until Defendant files its answer with any potential counterclaims, the issue of whether this Court should deny supplemental jurisdiction to any of Defendant's claims is premature. 28 U.S.C. § 1367(a); Fed. R. Civ. P. 13. Such an application to the discretion of the District Court to deny supplemental jurisdiction to a claim not currently before it may be novel, but it is also unavailing, and this Court declines to grant Plaintiff's motion on the basis of any absence of jurisdiction under 28 U.S.C. § 1367(a).

C.     **Absence of a "Nexus" Between the Stock Sale and the Surplus Funds**

The Plaintiffs make a fact-intensive argument that the disputed stock sale and the surplus funds had no "nexus," necessitating that this Court vacate the January 10, 2007, Order. (Pl. Br. at 1-5.) Unforunately, this Court finds that the Plaintiffs have not properly placed an argument before it. Plaintiffs fail to present an issue before the Court because they have not followed the requirements of the Federal Rules of Civil Procedure and additionally because this Court fails to deduce from the motion what the legal basis of the "nexus" argument is.

Federal Rule of Civil Procedure 72(a) states:

> A party may serve and file objections to the order within 10 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

In addition, Local Rule of Civil Procedure 72.1(c)(1)(A) requires objecting parties both specifically identify the portion of the magistrate judge's ruling appealed from and the basis therefor, and to provide a copy of the transcript of any findings of fact to the district court within ten (10) days of filing the appeal. An examination of the docket reveals that the current motion was filed on March 5, 2007, well beyond the ten-day limitation called

for in Rule 72. Furthermore, a thorough reading of Plaintiffs' brief does not disclose when they timely objected to any alleged defects in Judge Cecchi's Order of January 10, 2007. Finally, the Court cannot discern from the materials made available by the Plaintiffs what the legal basis to their "nexus" argument is.[2] The only authority cited by Plaintiff in its "nexus" argument is 12 U.S.C. § 1821(d)(11)(A)(v), but the Plaintiffs do not appear to make an argument based on this statutory section. (Pl. Br. at 2.) Instead, they appear to rely on a concession by the Defendant that "the uncontroverted proof is that the funds under the FDIC's control [the surplus funds] have no nexus to the stock sale," but supply no legal authority to give weight to the meaning of that concession. (Id. at 5.) Given this combination of defects in complying with the Rules for objecting to a magistrate judge's order and the absence of authority in the brief, the Court is unwilling to conjecture as to the real nature of Plaintiffs' argument.

**D.     Plaintiffs' Argument as to DeMane's Post-Resolution Interest in the Surplus Funds**

Plaintiffs' final claim with respect to the surplus funds is that DeMane has essentially no claim to the surplus funds in any case, whether he wins or loses this case. If DeMane prevails in this case, Plaintiffs argue, he will possess 2% of Dollar Bancorp, the entity to which the surplus funds will be distributed, but will have no direct claim to

---

[2]Plaintiffs' "nexus" argument contains several statements that could, if supported by additional facts and authority, potentially establish an objection to the order. (Pl. Br. at 3, 5.) Plaintiffs make incipient arguments that could be variously construed as concerning shareholder standing (Pl. Br. at 3), the definition of "case" or "controversy" under Article III (Pl. Br. at 5), and possibly an issue regarding the rights of minority shareholders in Dollar Bancorp. (Pl. Br. at 2-3.) Without further identification of the legal issues by the Plaintiffs, however, this Court will not attempt to inject itself into the case by claiming to divine the true intent of their brief.

the funds. (Pl. Br. at 6.) If, however, Plaintiffs prevail on their claim for rescission of their stock purchases from DeMane, Plaintiffs claims that they will be owed a return of their purchase price on the stock transactions from DeMane. (Id. at 7-8.) As the Plaintiffs' stock purchases amounted to $4 million, they claim that the surplus funds of $940,299.99 would necessarily be exhausted in paying their claims and that DeMane would have no interest in them. (Id.; Order of Jan. 10, 2007.)

As in the "nexus" issue discussed in Part C., supra, Plaintiffs have failed to comply with Federal Rule of Civil Procedure 72(a) and Local Rule of Civil Procedure 72.1(c)(A). The instant motion, interpreted by this Court as an appeal of the January 10, 2007, Order of Magistrate Judge Cecchi, was neither filed within the ten (10) days required nor does it identify where the issue presented was raised or objected to before Judge Cecchi. Fed R. Civ. P. 72(a); L. Civ. R. 72.1(c)(A).

With regard to presenting the issue objected to in Judge Cecchi's Order, this portion of Plaintiffs' brief does focus on the factual status regarding DeMane's stockholder interest, and whether any outcome in the current case will result in DeMane obtaining any of the surplus funds in a hypothetical liquidation of Dollar Bancorp. (Pl. Br. at 6-8.) Plaintiffs' argument on this issue fails, once again, because it does not identify the legal issue before the Court.

As noted above, a party objecting to an order of a United States Magistrate Judge must identify the basis for its appeal. L. Civ. R. 72.1(c)(A). To the extent that it is a factual issue presented to this Court for clear error review, the party must identify the portion of the record in question or provide a transcript. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); L. Civ. R. 72.1(c)(A) ("[t]he party filing an appeal shall

provide to the Court a transcript of that portion of the hearing before the Magistrate Judge wherein findings of fact were made"). To the extent that the party expects a district court to review an issue of law de novo, it must identify the issue. L. Civ. R. 72.1(c)(A) (specifying "a written notice of appeal which shall specifically designate the order or part thereof appealed from and the basis for objection thereto"). While Judge Cecchi's order is sufficiently brief that a party could theoretically be excused for failing to cite specific language from it, Plaintiffs have not provided any law incorrectly construed below or any factual findings in which Judge Cecchi clearly erred.[3]

Indeed, Plaintiffs cite no authority at all in this argument, and Defendant responds in kind with a discussion of the issue entirely devoid of support. (Pl. Br. at 6-8; Def. Opp. Br. at 12-13.) In their Reply Brief, Plaintiffs appear to focus on New Jersey state corporate law: "[a]ny claim that Defendant may have to the distribution of assets of that corporation arises exclusively under state law and implicates no federal law." Much as this Court would like to be able to pursue this argument to its conclusion, it is once again unable to do so without a more specific legal basis for Plaintiffs' motion. As this Court cannot identify the basis of Plaintiffs' argument on this issue from the briefing of the parties, and because Plaintiffs have failed to comply with the applicable Local and Federal Rules governing objections to orders of Magistrate Judges, this Court denies Plaintiffs' motion with regard to this issue.

---

[3] A cursory perusal of the record does disclose four letters that led up to the January 10, 2007, Order of Judge Cecchi at issue in the motion. (Seaton Letter of Jan. 5, 2007; Greenberg Letter of Jan. 8, 2007; Seaton Letter of Jan. 8, 2007; Greenberg Letter of Jan. 9, 2007.) These letters add some depth to the background in the current motion, but are of little assistance in identifying the legal bases for Plaintiffs' current challenge.

**CONCLUSION**

For the reasons set forth above, this Court denies Plaintiffs' motion to vacate the January 10, 2007, Order of Judge Cecchi. An appropriate Order accompanies this Opinion.


DATED: December 21, 2007                              /s/ Jose L. Linares
                                                     United States District Judge